# EXHIBIT 6

**U.S. Department of Education &
U.S. Department of Justice,
Dear Colleague Letter on Transgender Students
(May 13, 2016)**

Case 2:16-cv-00943-PP   Filed 08/15/16   Page 1 of 10   Document 10-6




**U.S. Department of Justice**
*Civil Rights Division*

**U.S. Department of Education**
*Office for Civil Rights*

# Dear Colleague Letter on Transgender Students
## Notice of Language Assistance

If you have difficulty understanding English, you may, free of charge, request language assistance services for this Department information by calling 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), or email us at: Ed.Language.Assistance@ed.gov.

**Aviso a personas con dominio limitado del idioma inglés:** Si usted tiene alguna dificultad en entender el idioma inglés, puede, sin costo alguno, solicitar asistencia lingüística con respecto a esta información llamando al 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), o envíe un mensaje de correo electrónico a: Ed.Language.Assistance@ed.gov.

**給英語能力有限人士的通知:** 如果您不懂英語， 或者使用英语有困难，您可以要求獲得向大眾提供的語言協助服務，幫助您理解教育部資訊。這些語言協助服務均可免費提供。如果您需要有關口譯或筆譯服務的詳細資訊，請致電 1-800-USA-LEARN (1-800-872-5327) (聽語障人士專線：1-800-877-8339),或電郵: Ed.Language.Assistance@ed.gov。

**Thông báo dành cho những người có khả năng Anh ngữ hạn chế:** Nếu quý vị gặp khó khăn trong việc hiểu Anh ngữ thì quý vị có thể yêu cầu các dịch vụ hỗ trợ ngôn ngữ cho các tin tức của Bộ dành cho công chúng. Các dịch vụ hỗ trợ ngôn ngữ này đều miễn phí. Nếu quý vị muốn biết thêm chi tiết về các dịch vụ phiên dịch hay thông dịch, xin vui lòng gọi số 1-800-USA-LEARN (1-800-872-5327) (TTY:     1-800-877-8339), hoặc email: Ed.Language.Assistance@ed.gov.

**영어 미숙자를 위한 공고:** 영어를 이해하는 데 어려움이 있으신 경우, 교육부 정보 센터에 일반인 대상 언어 지원 서비스를 요청하실 수 있습니다. 이러한 언어 지원 서비스는 무료로 제공됩니다. 통역이나 번역 서비스에 대해 자세한 정보가 필요하신 경우, 전화번호 1-800-USA-LEARN (1-800-872-5327) 또는 청각 장애인용 전화번호 1-800-877-8339 또는 이메일주소 Ed.Language.Assistance@ed.gov 으로 연락하시기 바랍니다.

**Paunawa sa mga Taong Limitado ang Kaalaman sa English:**  Kung nahihirapan kayong makaintindi ng English, maaari kayong humingi ng tulong ukol dito sa inpormasyon ng Kagawaran mula sa nagbibigay ng serbisyo na pagtulong kaugnay ng wika.  Ang serbisyo na pagtulong kaugnay ng wika ay libre. Kung kailangan ninyo ng dagdag na impormasyon tungkol sa mga serbisyo kaugnay ng pagpapaliwanag o pagsasalin, mangyari lamang tumawag sa 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), o mag-email sa: Ed.Language.Assistance@ed.gov.

**Уведомление для лиц с ограниченным знанием английского языка:**  Если вы испытываете трудности в понимании английского языка, вы можете попросить, чтобы вам предоставили перевод информации, которую Министерство Образования доводит до всеобщего сведения. Этот перевод предоставляется бесплатно. Если вы хотите получить более подробную информацию об услугах устного и письменного перевода, звоните по телефону 1-800-USA-LEARN (1-800-872-5327) (служба для слабослышащих: 1-800-877-8339), или отправьте сообщение по адресу: Ed.Language.Assistance@ed.gov.




**U.S. Department of Justice**  
*Civil Rights Division*

**U.S. Department of Education**  
*Office for Civil Rights*

May 13, 2016

Dear Colleague:

Schools across the country strive to create and sustain inclusive, supportive, safe, and nondiscriminatory communities for all students. In recent years, we have received an increasing number of questions from parents, teachers, principals, and school superintendents about civil rights protections for transgender students. Title IX of the Education Amendments of 1972 (Title IX) and its implementing regulations prohibit sex discrimination in educational programs and activities operated by recipients of Federal financial assistance.[1] This prohibition encompasses discrimination based on a student's gender identity, including discrimination based on a student's transgender status. This letter summarizes a school's Title IX obligations regarding transgender students and explains how the U.S. Department of Education (ED) and the U.S. Department of Justice (DOJ) evaluate a school's compliance with these obligations.

ED and DOJ (the Departments) have determined that this letter is *significant guidance*.[2] This guidance does not add requirements to applicable law, but provides information and examples to inform recipients about how the Departments evaluate whether covered entities are complying with their legal obligations. If you have questions or are interested in commenting on this guidance, please contact ED at ocr@ed.gov or 800-421-3481 (TDD 800-877-8339); or DOJ at education@usdoj.gov or 877-292-3804 (TTY: 800-514-0383).

Accompanying this letter is a separate document from ED's Office of Elementary and Secondary Education, *Examples of Policies and Emerging Practices for Supporting Transgender Students*. The examples in that document are taken from policies that school districts, state education agencies, and high school athletics associations around the country have adopted to help ensure that transgender students enjoy a supportive and nondiscriminatory school environment. Schools are encouraged to consult that document for practical ways to meet Title IX's requirements.[3]

**Terminology**

- *Gender identity* refers to an individual's internal sense of gender. A person's gender identity may be different from or the same as the person's sex assigned at birth.

- *Sex assigned at birth* refers to the sex designation recorded on an infant's birth certificate should such a record be provided at birth.

- *Transgender* describes those individuals whose gender identity is different from the sex they were assigned at birth. A *transgender male* is someone who identifies as male but was assigned the sex of female at birth; a *transgender female* is someone who identifies as female but was assigned the sex of male at birth.

- *Gender transition* refers to the process in which transgender individuals begin asserting the sex that corresponds to their gender identity instead of the sex they were assigned at birth. During gender transition, individuals begin to live and identify as the sex consistent with their gender identity and may dress differently, adopt a new name, and use pronouns consistent with their gender identity. Transgender individuals may undergo gender transition at any stage of their lives, and gender transition can happen swiftly or over a long duration of time.

**Compliance with Title IX**

As a condition of receiving Federal funds, a school agrees that it will not exclude, separate, deny benefits to, or otherwise treat differently on the basis of sex any person in its educational programs or activities unless expressly authorized to do so under Title IX or its implementing regulations.[4] The Departments treat a student's gender identity as the student's sex for purposes of Title IX and its implementing regulations. This means that a school must not treat a transgender student differently from the way it treats other students of the same gender identity. The Departments' interpretation is consistent with courts' and other agencies' interpretations of Federal laws prohibiting sex discrimination.[5]

The Departments interpret Title IX to require that when a student or the student's parent or guardian, as appropriate, notifies the school administration that the student will assert a gender identity that differs from previous representations or records, the school will begin treating the student consistent with the student's gender identity. Under Title IX, there is no medical diagnosis or treatment requirement that students must meet as a prerequisite to being treated consistent with their gender identity.[6] Because transgender students often are unable to obtain identification documents that reflect their gender identity (*e.g.*, due to restrictions imposed by state or local law in their place of birth or residence),[7] requiring students to produce such identification documents in order to treat them consistent with their gender identity may violate Title IX when doing so has the practical effect of limiting or denying students equal access to an educational program or activity.

A school's Title IX obligation to ensure nondiscrimination on the basis of sex requires schools to provide transgender students equal access to educational programs and activities even in circumstances in which other students, parents, or community members raise objections or concerns. As is consistently recognized in civil rights cases, the desire to accommodate others' discomfort cannot justify a policy that singles out and disadvantages a particular class of students.[8]

1. *Safe and Nondiscriminatory Environment*

Schools have a responsibility to provide a safe and nondiscriminatory environment for all students, including transgender students. Harassment that targets a student based on gender identity, transgender status, or gender transition is harassment based on sex, and the Departments enforce Title IX accordingly.[9] If sex-based harassment creates a hostile environment, the school must take prompt and effective steps to end the harassment, prevent its recurrence, and, as appropriate, remedy its effects. A school's failure to treat students consistent with their gender identity may create or contribute to a hostile environment in violation of Title IX. For a more detailed discussion of Title IX

requirements related to sex-based harassment, see guidance documents from ED's Office for Civil Rights (OCR) that are specific to this topic.[10]

2. **Identification Documents, Names, and Pronouns**

Under Title IX, a school must treat students consistent with their gender identity even if their education records or identification documents indicate a different sex. The Departments have resolved Title IX investigations with agreements committing that school staff and contractors will use pronouns and names consistent with a transgender student's gender identity.[11]

3. **Sex-Segregated Activities and Facilities**

Title IX's implementing regulations permit a school to provide sex-segregated restrooms, locker rooms, shower facilities, housing, and athletic teams, as well as single-sex classes under certain circumstances.[12] When a school provides sex-segregated activities and facilities, transgender students must be allowed to participate in such activities and access such facilities consistent with their gender identity.[13]

- **Restrooms and Locker Rooms**. A school may provide separate facilities on the basis of sex, but must allow transgender students access to such facilities consistent with their gender identity.[14] A school may not require transgender students to use facilities inconsistent with their gender identity or to use individual-user facilities when other students are not required to do so. A school may, however, make individual-user options available to all students who voluntarily seek additional privacy.[15]

- **Athletics.** Title IX regulations permit a school to operate or sponsor sex-segregated athletics teams when selection for such teams is based upon competitive skill or when the activity involved is a contact sport.[16] A school may not, however, adopt or adhere to requirements that rely on overly broad generalizations or stereotypes about the differences between transgender students and other students of the same sex (*i.e.*, the same gender identity) or others' discomfort with transgender students.[17] Title IX does not prohibit age-appropriate, tailored requirements based on sound, current, and research-based medical knowledge about the impact of the students' participation on the competitive fairness or physical safety of the sport.[18]

- **Single-Sex Classes**. Although separating students by sex in classes and activities is generally prohibited, nonvocational elementary and secondary schools may offer nonvocational single-sex classes and extracurricular activities under certain circumstances.[19] When offering such classes and activities, a school must allow transgender students to participate consistent with their gender identity.

- **Single-Sex Schools**. Title IX does not apply to the admissions policies of certain educational institutions, including nonvocational elementary and secondary schools, and private undergraduate colleges.[20] Those schools are therefore permitted under Title IX to set their own

sex-based admissions policies. Nothing in Title IX prohibits a private undergraduate women's college from admitting transgender women if it so chooses.

- **Social Fraternities and Sororities**. Title IX does not apply to the membership practices of social fraternities and sororities.[21] Those organizations are therefore permitted under Title IX to set their own policies regarding the sex, including gender identity, of their members. Nothing in Title IX prohibits a fraternity from admitting transgender men or a sorority from admitting transgender women if it so chooses.

- **Housing and Overnight Accommodations**. Title IX allows a school to provide separate housing on the basis of sex.[22] But a school must allow transgender students to access housing consistent with their gender identity and may not require transgender students to stay in single-occupancy accommodations or to disclose personal information when not required of other students. Nothing in Title IX prohibits a school from honoring a student's voluntary request for single-occupancy accommodations if it so chooses.[23]

- **Other Sex-Specific Activities and Rules**. Unless expressly authorized by Title IX or its implementing regulations, a school may not segregate or otherwise distinguish students on the basis of their sex, including gender identity, in any school activities or the application of any school rule. Likewise, a school may not discipline students or exclude them from participating in activities for appearing or behaving in a manner that is consistent with their gender identity or that does not conform to stereotypical notions of masculinity or femininity (*e.g.*, in yearbook photographs, at school dances, or at graduation ceremonies).[24]

4. *Privacy and Education Records*

Protecting transgender students' privacy is critical to ensuring they are treated consistent with their gender identity. The Departments may find a Title IX violation when a school limits students' educational rights or opportunities by failing to take reasonable steps to protect students' privacy related to their transgender status, including their birth name or sex assigned at birth.[25] Nonconsensual disclosure of personally identifiable information (PII), such as a student's birth name or sex assigned at birth, could be harmful to or invade the privacy of transgender students and may also violate the Family Educational Rights and Privacy Act (FERPA).[26] A school may maintain records with this information, but such records should be kept confidential.

- **Disclosure of Personally Identifiable Information from Education Records**. FERPA generally prevents the nonconsensual disclosure of PII from a student's education records; one exception is that records may be disclosed to individual school personnel who have been determined to have a legitimate educational interest in the information.[27] Even when a student has disclosed the student's transgender status to some members of the school community, schools may not rely on this FERPA exception to disclose PII from education records to other school personnel who do not have a legitimate educational interest in the information. Inappropriately disclosing (or requiring students or their parents to disclose) PII from education records to the school community may

    violate FERPA and interfere with transgender students' right under Title IX to be treated consistent with their gender identity.

- **Disclosure of Directory Information**. Under FERPA's implementing regulations, a school may disclose appropriately designated directory information from a student's education record if disclosure would not generally be considered harmful or an invasion of privacy.[28] Directory information may include a student's name, address, telephone number, date and place of birth, honors and awards, and dates of attendance.[29] School officials may not designate students' sex, including transgender status, as directory information because doing so could be harmful or an invasion of privacy.[30] A school also must allow eligible students (*i.e.*, students who have reached 18 years of age or are attending a postsecondary institution) or parents, as appropriate, a reasonable amount of time to request that the school not disclose a student's directory information.[31]

- **Amendment or Correction of Education Records**. A school may receive requests to correct a student's education records to make them consistent with the student's gender identity. Updating a transgender student's education records to reflect the student's gender identity and new name will help protect privacy and ensure personnel consistently use appropriate names and pronouns.

  - Under FERPA, a school must consider the request of an eligible student or parent to amend information in the student's education records that is inaccurate, misleading, or in violation of the student's privacy rights.[32] If the school does not amend the record, it must inform the requestor of its decision and of the right to a hearing. If, after the hearing, the school does not amend the record, it must inform the requestor of the right to insert a statement in the record with the requestor's comments on the contested information, a statement that the requestor disagrees with the hearing decision, or both. That statement must be disclosed whenever the record to which the statement relates is disclosed.[33]
  - Under Title IX, a school must respond to a request to amend information related to a student's transgender status consistent with its general practices for amending other students' records.[34] If a student or parent complains about the school's handling of such a request, the school must promptly and equitably resolve the complaint under the school's Title IX grievance procedures.[35]

* * *

We appreciate the work that many schools, state agencies, and other organizations have undertaken to make educational programs and activities welcoming, safe, and inclusive for all students.

Sincerely,

| /s/ | /s/ |
|---|---|
| Catherine E. Lhamon | Vanita Gupta |
| Assistant Secretary for Civil Rights | Principal Deputy Assistant Attorney General for Civil Rights |
| U.S. Department of Education | U.S. Department of Justice |

---

[1] 20 U.S.C. §§ 1681–1688; 34 C.F.R. Pt. 106; 28 C.F.R. Pt. 54. In this letter, the term *schools* refers to recipients of Federal financial assistance at all educational levels, including school districts, colleges, and universities. An educational institution that is controlled by a religious organization is exempt from Title IX to the extent that compliance would not be consistent with the religious tenets of such organization. 20 U.S.C. § 1681(a)(3); 34 C.F.R. § 106.12(a).

[2] Office of Management and Budget, Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432 (Jan. 25, 2007), www.whitehouse.gov/sites/default/files/omb/fedreg/2007/012507_good_guidance.pdf.

[3] ED, *Examples of Policies and Emerging Practices for Supporting Transgender Students* (May 13, 2016), www.ed.gov/oese/oshs/emergingpractices.pdf. OCR also posts many of its resolution agreements in cases involving transgender students online at www.ed.gov/ocr/lgbt.html. While these agreements address fact-specific cases, and therefore do not state general policy, they identify examples of ways OCR and recipients have resolved some issues addressed in this guidance.

[4] 34 C.F.R. §§ 106.4, 106.31(a). For simplicity, this letter cites only to ED's Title IX regulations. DOJ has also promulgated Title IX regulations. *See* 28 C.F.R. Pt. 54. For purposes of how the Title IX regulations at issue in this guidance apply to transgender individuals, DOJ interprets its regulations similarly to ED. State and local rules cannot limit or override the requirements of Federal laws. *See* 34 C.F.R. § 106.6(b).

[5] *See, e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 79 (1998); *G.G. v. Gloucester Cnty. Sch. Bd.*, No. 15-2056, 2016 WL 1567467, at *8 (4th Cir. Apr. 19, 2016); *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011); *Smith v. City of Salem*, 378 F.3d 566, 572-75 (6th Cir. 2004); *Rosa v. Park W. Bank & Trust Co.*, 214 F.3d 213, 215–16 (1st Cir. 2000); *Schwenk v. Hartford*, 204 F.3d 1187, 1201–02 (9th Cir. 2000); *Schroer v. Billington*, 577 F. Supp. 2d 293, 306-08 (D.D.C. 2008); *Macy v. Dep't of Justice*, Appeal No. 012012082 (U.S. Equal Emp't Opportunity Comm'n Apr. 20, 2012). *See also* U.S. Dep't of Labor (USDOL), Training and Employment Guidance Letter No. 37-14, *Update on Complying with Nondiscrimination Requirements: Discrimination Based on Gender Identity, Gender Expression and Sex Stereotyping are Prohibited Forms of Sex Discrimination in the Workforce Development System* (2015), wdr.doleta.gov/directives/attach/TEGL/TEGL_37-14.pdf; USDOL, Job Corps, Directive: Job Corps Program Instruction Notice No. 14-31, *Ensuring Equal Access for Transgender Applicants and Students to the Job Corps Program* (May 1, 2015), https://supportservices.jobcorps.gov/Program%20Instruction%20Notices/pi_14_31.pdf; DOJ, Memorandum from the Attorney General, *Treatment of Transgender Employment Discrimination Claims Under Title VII of the Civil Rights Act of 1964* (2014), www.justice.gov/sites/default/files/opa/press-releases/attachments/2014/12/18/title_vii_memo.pdf; USDOL, Office of Federal Contract Compliance Programs, Directive 2014-02, *Gender Identity and Sex Discrimination* (2014), www.dol.gov/ofccp/regs/compliance/directives/dir2014_02.html.

[6] *See Lusardi v. Dep't of the Army*, Appeal No. 0120133395 at 9 (U.S. Equal Emp't Opportunity Comm'n Apr. 1, 2015) ("An agency may not condition access to facilities—or to other terms, conditions, or privileges of employment—on the completion of certain medical steps that the agency itself has unilaterally determined will somehow prove the bona fides of the individual's gender identity.").

[7] *See G.G.*, 2016 WL 1567467, at *1 n.1 (noting that medical authorities "do not permit sex reassignment surgery for persons who are under the legal age of majority").

[8] 34 C.F.R. § 106.31(b)(4); *see G.G.*, 2016 WL 1567467, at *8 & n.10 (affirming that individuals have legitimate and important privacy interests and noting that these interests do not inherently conflict with nondiscrimination principles); *Cruzan v. Special Sch. Dist. No. 1*, 294 F.3d 981, 984 (8th Cir. 2002) (rejecting claim that allowing a transgender woman "merely [to be] present in the women's faculty restroom" created a hostile environment); *Glenn*, 663 F.3d at 1321 (defendant's proffered justification that "other women might object to [the plaintiff]'s restroom use" was "wholly irrelevant"). *See also Palmore v. Sidoti*, 466 U.S. 429, 433 (1984) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect."); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985) (recognizing that "mere negative attitudes, or fear . . . are not permissible bases for" government action).

[9] *See, e.g.,* Resolution Agreement, *In re Downey Unified Sch. Dist., CA*, OCR Case No. 09-12-1095, (Oct. 8, 2014), www.ed.gov/documents/press-releases/downey-school-district-agreement.pdf (agreement to address harassment of transgender student, including allegations that peers continued to call her by her former name, shared pictures of her prior to her transition, and frequently asked questions about her anatomy and sexuality); Consent Decree, *Doe v. Anoka-Hennepin Sch. Dist. No. 11, MN* (D. Minn. Mar. 1, 2012), www.ed.gov/ocr/docs/investigations/05115901-d.pdf (consent decree to address sex-based harassment, including based on nonconformity with gender stereotypes); Resolution Agreement, *In re Tehachapi Unified Sch. Dist.*, *CA*, OCR Case No. 09-11-1031 (June 30, 2011), www.ed.gov/ocr/docs/investigations/09111031-b.pdf (agreement to address sexual and gender-based harassment, including harassment based on nonconformity with gender stereotypes). *See also Lusardi,* Appeal No. 0120133395, at *15 ("Persistent failure to use the employee's correct name and pronoun may constitute unlawful, sex-based harassment if such conduct is either severe or pervasive enough to create a hostile work environment").

[10] *See, e.g.*, OCR, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* (2001), www.ed.gov/ocr/docs/shguide.pdf; OCR, *Dear Colleague Letter: Harassment and Bullying* (Oct. 26, 2010), www.ed.gov/ocr/letters/colleague-201010.pdf; OCR, *Dear Colleague Letter: Sexual Violence* (Apr. 4, 2011), www.ed.gov/ocr/letters/colleague-201104.pdf; OCR, *Questions and Answers on Title IX and Sexual Violence* (Apr. 29, 2014), www.ed.gov/ocr/docs/qa-201404-title-ix.pdf.

[11] *See, e.g.*, Resolution Agreement, *In re Cent. Piedmont Cmty. Coll., NC*, OCR Case No. 11-14-2265 (Aug. 13, 2015), www.ed.gov/ocr/docs/investigations/more/11142265-b.pdf (agreement to use a transgender student's preferred name and gender and change the student's official record to reflect a name change).

[12] 34 C.F.R. §§ 106.32, 106.33, 106.34, 106.41(b).

[13] *See* 34 C.F.R. § 106.31.

[14] 34 C.F.R. § 106.33.

[15] *See, e.g.*, Resolution Agreement, *In re Township High Sch. Dist. 211, IL*, OCR Case No. 05-14-1055 (Dec. 2, 2015), www.ed.gov/ocr/docs/investigations/more/05141055-b.pdf (agreement to provide any student who requests additional privacy "access to a reasonable alternative, such as assignment of a student locker in near proximity to the office of a teacher or coach; use of another private area (such as a restroom stall) within the public area; use of a nearby private area (such as a single-use facility); or a separate schedule of use.").

[16] 34 C.F.R. § 106.41(b). Nothing in Title IX prohibits schools from offering coeducational athletic opportunities.

[17] 34 C.F.R. § 106.6(b), (c). An interscholastic athletic association is subject to Title IX if (1) the association receives Federal financial assistance or (2) its members are recipients of Federal financial assistance and have ceded controlling authority over portions of their athletic program to the association. Where an athletic association is covered by Title IX, a school's obligations regarding transgender athletes apply with equal force to the association.

[18] The National Collegiate Athletic Association (NCAA), for example, reported that in developing its policy for participation by transgender students in college athletics, it consulted with medical experts, athletics officials, affected students, and a consensus report entitled *On the Team: Equal Opportunity for Transgender Student Athletes* (2010) by Dr. Pat Griffin & Helen J. Carroll (*On the Team*), https://www.ncaa.org/sites/default/files/NCLR_TransStudentAthlete%2B(2).pdf. *See* NCAA Office of Inclusion, *NCAA Inclusion of Transgender Student-Athletes* 2, 30-31 (2011), https://www.ncaa.org/sites/default/files/Transgender_Handbook_2011_Final.pdf (citing *On the Team*). The *On the Team* report noted that policies that may be appropriate at the college level may "be unfair and too complicated for [the high school] level of competition." *On the Team* at 26. After engaging in similar processes, some state interscholastic athletics associations have adopted policies for participation by transgender students in high school athletics that they determined were age-appropriate.

[19] 34 C.F.R. § 106.34(a), (b). Schools may also separate students by sex in physical education classes during participation in contact sports. *Id*. § 106.34(a)(1).

[20] 20 U.S.C. § 1681(a)(1); 34 C.F.R. § 106.15(d); 34 C.F.R. § 106.34(c) (a recipient may offer a single-sex public nonvocational elementary and secondary school so long as it provides students of the excluded sex a "substantially

equal single-sex school or coeducational school").

[21] 20 U.S.C. § 1681(a)(6)(A); 34 C.F.R. § 106.14(a).

[22] 20 U.S.C. § 1686; 34 C.F.R. § 106.32.

[23] *See, e.g.,* Resolution Agreement, *In re Arcadia Unified. Sch. Dist., CA*, OCR Case No. 09-12-1020, DOJ Case No. 169-12C-70, (July 24, 2013), www.justice.gov/sites/default/files/crt/legacy/2013/07/26/arcadiaagree.pdf (agreement to provide access to single-sex overnight events consistent with students' gender identity, but allowing students to request access to private facilities).

[24] *See* 34 C.F.R. §§ 106.31(a), 106.31(b)(4). *See also*, *In re Downey Unified Sch. Dist., CA*, *supra* n. 9; *In re Cent. Piedmont Cmty. Coll., NC, supra* n. 11.

[25] 34 C.F.R. § 106.31(b)(7).

[26] 20 U.S.C. § 1232g; 34 C.F.R. Part 99. FERPA is administered by ED's Family Policy Compliance Office (FPCO). Additional information about FERPA and FPCO is available at www.ed.gov/fpco.

[27] 20 U.S.C. § 1232g(b)(1)(A); 34 C.F.R. § 99.31(a)(1).

[28] 34 C.F.R. §§ 99.3, 99.31(a)(11), 99.37.

[29] 20 U.S.C. § 1232g(a)(5)(A); 34 C.F.R. § 99.3.

[30] Letter from FPCO to Institutions of Postsecondary Education 3 (Sept. 2009), www.ed.gov/policy/gen/guid/fpco/doc/censuslettertohighered091609.pdf.

[31] 20 U.S.C. § 1232g(a)(5)(B); 34 C.F.R. §§ 99.3. 99.37(a)(3).

[32] 34 C.F.R. § 99.20.

[33] 34 C.F.R. §§ 99.20-99.22.

[34] *See* 34 C.F.R. § 106.31(b)(4).

[35] 34 C.F.R. § 106.8(b).