UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ASHTON WHITAKER, a minor, by his
mother and next friend,
MELISSA WHITAKER,

        Plaintiff,

                                           Civ. Action No. 2:16-cv-00943

KENOSHA UNIFIED SCHOOL DISTRICT
NO. 1 BOARD OF EDUCATION and SUE
SAVAGLIO-JARVIS, in her official capacity as
Superintendent of the Kenosha Unified School District
No. 1,

        Defendants.

---

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

## **INTRODUCTION**

A mere twenty days into this case Plaintiff, Ash Whitaker, ("Plaintiff"), filed a Motion for Preliminary Injunction that seeks to compel the ultimate relief sought in this litigation. The motion does not seek to preserve the status quo. Rather, Plaintiff seeks a temporary injunction requiring the Kenosha Unified School District No. 1 ("KUSD") to abruptly change its practice and policy by allowing Plaintiff to use the men's rest room despite the fact that Plaintiff's birth gender[1] is female. Plaintiff also seeks a temporary injunction prohibiting KUSD from using the name set forth on Plaintiff's birth certificate and from using female pronouns when addressing Plaintiff. The Motion for Preliminary Injunction must be denied. Plaintiff has little, if any, likelihood of success on the merits on the issues presented and the balance of equities simply do not fall in favor of Plaintiff.

Plaintiff's request for an injunction faces two tremendous hurdles. First, Plaintiff's requested injunction is nearly identical to the relief ordered by the Fourth Circuit in *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709 (4th Cir. 2016) ("*Grimm*"). This is significant because in a highly unusual move[2] the Supreme Court recalled and stayed the Fourth Circuit's mandate pending the timely filing and disposition of a petition for a writ of certiorari. *Gloucester Cty. Sch. Bd. v. G.G. ex rel. Grimm*, 136 S. Ct. 2442 (2016) ("*Gloucester Cty. Sch. Bd.*"). Plaintiff must overcome the obviously damaging implications that arise from the Supreme Court's order to

---

[1] "Birth gender" or "biological sex" is meant to encompass what Plaintiff terms "sex assigned at birth" to the extent that it refers to the gender designation recorded on an infant's birth certificate. *See* Pltf.'s Amended Comp. (Doc. 12) at ¶14.

[2] The Supreme Court takes such actions only on the rarest of occasions. *See Bd. of Ed. of City School Dist. of City of New Rochelle v. Taylor*, 82 S.Ct. 10, 10 (1961) ("On such an application, since the Court of Appeals refused the stay . . . this court requires an extraordinary showing, before it will grant a stay of the decree below pending the application for a certiorari."); *Russo v. Byrne*, 409 U.S. 1219, 1221 (1972) ("If the application presents frivolous questions it should be denied. If it tenders a ruling out of harmony with our prior decisions, or questions of transcending public importance, or issues which would likely induce this Court to grant certiorari, the stay should be granted.").

1

stay a nearly identical order until it is able to review the case. *See Gloucester Cty. Sch. Bd.*, 136 S. Ct. at 2442. If the Supreme Court was not willing to change the status quo in *Grimm*, there is no basis for this Court to change the same status quo here.

Second, Plaintiff's claim and its motion for an injunction rely heavily upon the May 12, 2016, guidance letter from the U.S. Department of Education ("Dept. of Edu.") (the "Dear Colleague Letter") in support of the proposition that Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX") permits transgender students to use any bathroom they choose. The Dear Colleague Letter's validity and force, however, has been recently eviscerated by the nationwide injunction issued by the United States District Court for the Northern District of Texas, in *Texas v. United States*, No. 7:16-CV-00054-O, 2016 WL 4426495 (N.D. Tex. Aug. 21, 2016).[3] The District Court's thorough, well-reasoned analysis of the legal issues relating to the Dear Colleague Letter, while not binding on this Court, should lead this Court to the same conclusion: the "sex" discrimination barred by Title IX does not encompass transgender status.

For all of these reasons, as fully explained below, Plaintiff's Motion for Preliminary Injunction must be denied. Plaintiff fails to meet the threshold requirements for an injunction as: (1) Plaintiff has an almost non-existent likelihood of success on the merits as Plaintiff's claims are not cognizable under the law; (2) Plaintiff has failed to demonstrate irreparable harm and no adequate remedy at law due to the excessive delay in bringing this Motion; and (3) any alleged harm would be caused by the lawful application of KUSD's policies. Even if Plaintiff could overcome these threshold requirements, Plaintiff's Motion should still be denied because: (1) a weighing of the respective harms supports a denial of the Motion; and (2) the requested preliminary injunction will harm the public interest.

---

[3] A copy of the Preliminary Injunction Order in *Texas v. United States*, No. 7:16-CV-00054-O, 2016 WL 4426495 (N.D. Tex. Aug. 21, 2016), is attached as Def.'s Ex. 5.

2

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a sixteen-year-old student at George Nelson Tremper High School in the Kenosha Unified School District No. 1 in Kenosha, Wisconsin. Pltf.'s Memo. of Law (Doc. 11) at 1. Plaintiff was born as a biological female with a birth certificate that designates gender as "female". *Id.* Plaintiff identifies as being transgendered and currently identifies as male. *Id.* In Plaintiff's freshmen and sophomore years of high school, Plaintiff slowly began transitioning more publicly to identifying as male. *Id.* Plaintiff has not undergone any sex change surgeries. Pltf.'s Amended Comp. (Doc. 12) at ¶45.

KUSD requires its students to use the bathroom that corresponds with his or her birth gender or to a single user, gender neutral bathroom. Pltf.'s Amended Comp. (Doc. 12) at ¶27. KUSD also requires that when students travel on school-sponsored trips that students may only share rooms with other students who share the same birth gender. KUSD's policy of requiring the use of sex-segregated bathroom and locker room facilities based on a students' birth sex, rather than their gender identity, was set in place in order to respect the privacy rights of all students to undress and perform personal bodily functions outside the presence of the opposite gender.

The District has worked with Plaintiff and Melissa Whitaker to address issues and concerns they had raised about the use of the bathrooms. However, on April 19, 2016, Ilona Turner of the Transgender Law Center wrote a letter to KUSD demanding that KUSD rescind its policy of requiring students to use the bathroom that corresponds with their birth gender or a single user bathroom and threatening a lawsuit. *See* Letter from Ilona Turner to KUSD (Def.'s Ex. 1) ("Turner Letter") at 5. On April 26, 2016, KUSD, though counsel, responded to Ms. Turner and the Transgender Law Center, informing them that KUSD would not be taking the requested actions. *See* Letter from Mallery & Zimmerman, S.C. to Ilona Turner (Def.'s Ex. 2) ("M & Z Letter") at

3

2-3.  On May 12, 2016, Plaintiff, through the Transgender Law Center filed an Office for Civil

Rights ("OCR") Complaint.  *See* OCR Complaint (Def.'s Ex. 3).  Before filing this lawsuit,

Plaintiff's attorneys requested the withdraw of the OCR Complaint without prejudice.[4]  Pltf.'s

Amended Comp. (Doc. 12) at ¶94.

This lawsuit was filed on July 19, 2016.  *See* Pltf.'s Comp. (Doc. 1).  Twenty days after

service of the Complaint on KUSD, on August 15, 2016, Plaintiff filed an Amended Complaint

and this Motion for Preliminary Injunction with supporting memorandum and exhibits.  *See* Pltf.'s

Amended Comp. (Doc. 12); Pltf.'s Motion for Preliminary Injunction (Doc. 10); Pltf.'s Memo. of

Law (Doc. 11).  On August 16, 2016, KUSD filed a Motion to Dismiss Plaintiff's Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Def.'s Motion to Dismiss

(Doc. 14); Def.'s Brief in Support of Motion to Dismiss (Doc. 15).

## PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary remedy intended to preserve the status quo

until the merits of a case may be resolved."  *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d

766, 770 (7th Cir. 2001).  The Seventh Circuit undertakes a two-step analysis in assessing whether

a preliminary injunction is warranted.  *See Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470,

474-75 (7th Cir. 2001).  First, the party seeking a preliminary injunction must demonstrate: (1) a

reasonable likelihood of success on the merits of the underlying claim; (2) no adequate remedy at

law exists; and (3) it will suffer irreparable harm if the preliminary injunction is denied.  *Id.* (citing

*Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).  The likelihood of success factor

serves as a threshold requirement; "if this factor is unsatisfied, and if the plaintiff has not shown

irreparable injury, the court need go no further in denying the preliminary injunction."  *O'Connor*

---

[4] Interestingly, if the OCR investigation had progressed it would have been barred by the Temporary Injunction ordered by the Northern District of Texas.  *See Texas*, 2016 WL 4426495, at *17.

4

*v. Bd. of Ed. of Sch. Dist. No. 23*, 645 F.2d 578, 580 (7th Cir. 1981) (citing *Kolz v. Board of Ed. of City of Chicago*, 576 F.2d 747 (7th Cir. 1978)); *see also Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1330-31 (7th Cir. 1980) (maintaining that while no one factor is determinative, if a court finds that under applicable law there is no probability of success on the merits and no irreparable injury, it is unnecessary for the court to consider the other factors).

Second, if these three conditions have been met, the Court will then consider: (4) whether the irreparable harm the applicant will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and (5) whether the preliminary injunction will harm the public interest. *Anderson*, 274 F.3d at 474-75 (citing *Ty, Inc.*, 237 F.3d at 895).[5]

Significant to this case, the Supreme Court has stated that preliminary injunctions have the limited purpose of merely preserving the relative positions of the parties until a trial on the merits can be held. *See University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *see also Am. Hosp. Ass'n*, 625 F.2d at 1330 ("The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits."). A preliminary injunction is "a provisional remedy designed to preserve the status quo until the case can be heard upon the merits." *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958). The status quo is "the last uncontested status which preceded the pending controversy." *Id.*

Preliminary injunctions that disturb the status quo are viewed more skeptically by courts and generally such a request to disturb the status quo increases the burden on the moving party.

---

[5] Plaintiff states that courts should weigh the balance of potential harms on a sliding scale against the movant's likelihood of success. *See* Pltf.'s Memo. of Law (Doc. 11) at 8. While Plaintiff still has a low likelihood of success on the merits, the sliding scale approach has been questioned in the Seventh Circuit. *See Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1346–47 (7th Cir. 1986) (Will, Senior District Judge, concurring).

5

*See Jordan v. Wolke*, 593 F.2d 772, 773-74 (7th Cir. 1978) (denying a request for a preliminary injunction that did not maintain the status quo, but instead mandated the construction of new facilities); *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1012 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006) (stating that courts must take into account whether preliminary relief would disturb the status quo, because "before there has been a trial on the merits, the function of the court is not to take whatever steps are necessary to prevent irreparable harm, but primarily to keep things as they were, until the court is able to determine the parties' respective legal rights" and the "emphasis on preserving the status quo is not the same as, and cannot be reduced to, minimizing irreparable harm to the parties during the pendency of litigation").  Thus, mandatory preliminary writs that change the status quo are ordinarily cautiously viewed and sparingly issued.  *Jordan*, 593 F.2d at 774.

## DISCUSSION

## I.     PLAINTIFF'S REQUESTED INJUNCTIVE RELIEF AIMS TO ALTER THE STATUS QUO AND MUST BE VIEWED CAUTIOUSLY.

Plaintiff's requested relief would require KUSD to change its existing policy regarding bathroom, locker rooms, and overnight accommodations.  When a preliminary injunction acts to disturb the status quo, courts must view such requests more cautiously and only grant under extraordinary circumstances.  *See University of Texas*, 451 U.S. at 395; *Am. Hosp. Ass'n*, 625 F.2d at 1330; *Jordan*, 593 F.2d at 774; *Westinghouse Elec. Corp.*, 256 F.2d at 808; *O Centro Espirita Beneficente Uniao Do Vegetal*, 389 F.3d at 1012.  In fact, this distinction between preserving the status quo versus changing it was a factor considered by the Supreme Court in recalling and staying the Fourth Circuit's mandate in *Grimm*.  *See Gloucester Cty. Sch. Bd.*, 136 S. Ct. at 2442 (Breyer, J., concurring) (stating "granting a stay will preserve the status quo (as of the time the Court of

Appeals made its decision) until the Court considers the forthcoming petition for certiorari").

While an injunction need not be denied solely because it seeks to alter the status quo, this factor

strongly mitigates against granting such relief and such relief should not ordinarily be granted. *See*

*Jordan*, 593 F.2d at 773-74; *see also Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994)

(citing *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) (stating that mandatory preliminary

injunctive relief, those that do not preserve the status quo, "in any circumstance is disfavored, and

warranted only in the most extraordinary circumstances").[6]

## II.  PLAINTIFF HAS A LOW LIKELIHOOD OF SUCCESS ON THE MERITS.[7]

In ruling on a preliminary injunction a key issue—often the dispositive one—is whether

the movant has shown a substantial likelihood of success on the merits. *Greater New Orleans Fair*

*Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1083 (D.C. Cir. 2011)

(citing *Munaf v. Geren*, 553 U.S. 674, 690, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008)). Here, Plaintiff

cannot demonstrate a substantial likelihood of success on the merits. Plaintiff's Title IX claim is

not recognized under the law. Additionally, Plaintiff's claims under the Equal Protection clause

fail because there is a rational reason for KUSD's policy.

---

[6] *See also Citizens Concerned for Separation of Church and State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980), *cert. denied* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981) ("It is fundamental that mandatory injunctive relief should be granted only under compelling circumstances inasmuch as it is a harsh remedial process not favored by the courts."); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo *pendente lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.")

[7] In further opposition to Plaintiff's Motion for Preliminary Injunction, KUSD incorporates by reference its Brief in Support of Motion to Dismiss (Doc. 15) in support of its argument that Plaintiff has a low likelihood of success on the merits. *See Wisconsin Coal. for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1044 (E.D. Wis. 2001) (addressing defendant's motion to dismiss before plaintiff's motion for preliminary injunction, because "the question of whether the plaintiff has demonstrated a reasonable likelihood of success on the merits of its claims is, to a large degree, bundled up with the issues raised by the defendants' motion to dismiss" and if plaintiff "fails to state a claim upon which relief can be granted, then it follows that a preliminary injunction would be inappropriate precisely because the plaintiff would not have satisfied the first of the preliminary injunction standards").

7

## A. Plaintiff Has Little Possibility Of Showing That Title IX Encompasses Transgender Status.

### i. Plaintiff has no likelihood of showing that "sex" under Title IX encompasses transgender status.

The pillars of Plaintiff's Motion for a Temporary Injunction are the interpretation of Title IX set forth in the Dear Colleague Letter and the Fourth Circuit's holding in *Grimm*. Both of these pillars, however, have rapidly crumbled in recent weeks.

The Fourth Circuit's decision in *Grimm* offers little support for Plaintiff. To begin with, the *Grimm* court did not hold that transgender status is protected under Title IX. The *Grimm* court, by a 2-1 vote, merely deferred to the Dept. of Edu.'s interpretation that "sex" within the meaning of Title IX encompasses transgender status. This is significant for two reasons. First, the Seventh Circuit has been much more skeptical of granting deference to administrative agencies under the *Auer* standard.[8] Thus, it is highly unlikely that the Seventh Circuit would also reach a conclusion that it should defer to the Dept. of Edu.'s interpretation that "sex" within the meaning of Title IX encompasses transgender status.

Second, the Supreme Court's action in recalling and staying the Fourth Circuit's mandate in *Grimm* further demonstrates that this pillar too is swiftly crumbling. The Supreme Court's order

---

[8] An agency's opinion letter interpreting its own regulation <u>may</u> be given deference under *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ("*Auer* deference"). However, the Supreme Court has been skeptical of federal agencies' interpretations of their own regulations, because by giving those interpretations *Auer* deference, the agency can make binding regulations without notice and comment. *See Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1212, 191 L. Ed. 2d 186 (2015) (Scalia, J., concurring); *Christensen v. Harris Cty.*, 529 U.S. 576, 587-58, 120 S. Ct. 1655, 1662-63, 146 L. Ed. 2d 621 (2000). This skepticism is shared in the Seventh Circuit. *See Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 676 F.3d 566, 577 (7th Cir. 2012) (holding that *Auer* deference does not apply to guidance documents the agency itself has "disclaimed . . . as authoritative or binding interpretations of its own rules"); *United States v. Raupp*, 677 F.3d 756, 765 (7th Cir. 2012) ("Indeed, there are signs on the horizon that the Supreme Court may be about to revisit *Auer* and endorse a more skeptical review of agency interpretations of their own regulations."); *Keys v. Barnhart*, 347 F.3d 990, 993 (7th Cir. 2003) (providing that in light of *Christensen*, *Auer* likely did not apply to agency determinations that do not have "the force of law" and that "[p]robably there is little left of *Auer*").

to stay the Fourth Circuit's mandate until it is able to review the case amply demonstrates that the Supreme Court has its doubts as to the validity of the Fourth Circuit's decision.

Beyond the erosion of *Grimm*, the injunction issued by the Northern District of Texas on August 21, 2016 further decays the pillars of Plaintiff's argument. In that order the District Court issued a nationwide injunction enjoining the Dept. of Edu. from enforcing the guidelines set forth in the Dear Colleague Letter. *See Texas*, 2016 WL 4426495, at *17-18. In *Texas*, the plaintiffs[9] sued the Dept. of Edu. challenging the assertions that Title IX requires that all persons must be afforded the opportunity to have access to restrooms, locker rooms, showers, and other intimate facilities which match their gender identity rather than their biological sex. *Id.* at *1. The *Texas* plaintiffs moved for a preliminary injunction enjoining the enforcement of the interpretations contained in the Dear Colleague Letter. *Id.* The District Court granted the injunction holding that the defendant agencies violated notice and comment requirements of the Administrative Procedures Act, 5 U.S.C. §§ 551-559 (the "APA"), and issued directives which contradicted the existing legislative and regulatory texts of Title IX. *Id.*

More specifically, the District Court found that plaintiffs showed a likelihood of success on the merits because: "(1) Defendants bypassed the notice and comment process required by the APA; (2) Title IX and [34 C.F.R.] § 106.33's text is not ambiguous; and (3) Defendants are not entitled to agency deference under *Auer v. Robbins*, 519 U.S. 452 (1997)." *Id.* at *11.[10]

---

[9] The Plaintiffs consist of thirteen states and agencies represented by state leaders, including Wisconsin, and two school districts. *See Texas*, 2016 WL 4426495, at *1 n.2.

[10] An agency's opinion letter interpreting its own regulation *may* be given *Auer* deference. Under *Auer* deference, an agency's interpretation of its own regulation is entitled to deference *only* when the language of the regulation is ambiguous and the interpretation is not plainly erroneous or inconsistent with the regulation. *Christensen*, 529 U.S. at 588; *Auer*, 519 U.S. at 461. When a regulation is not ambiguous, to defer to the agency's position "would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Christensen*, 529 U.S. at 588.

9

The injunction issued in *Texas* coupled with the Supreme Court's decision to stay the injunction in *Grimm* cast serious doubts on the alleged validity of Plaintiff's position that transgender status is a *per se* protected classification under Title IX. The *Texas* court appropriately stated that because it is impossible to know the precise issues that prompted the Supreme Court to grant a stay in *Grimm*, it is difficult to conclude that the Fourth Circuit's opinion would control the outcome. *See Texas*, 2016 WL 4426495, at *10 n.15. Thus, the only logical conclusion is that Plaintiff has a non-existent likelihood of success on the merits and that Title IX does not encompass transgender status.[11]

      ii.     *Plaintiff's eleventh-hour sex-stereotyping claim does not establish the existence of harassment based on a failure to conform to sex-stereotypes.*

Despite not pleading it in the Amended Complaint, Plaintiff's Motion in support of Temporary Injunction attempts to shoehorn the Title IX sex discrimination claim into a sex-stereotyping claim as recognized in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).[12] In *Price Waterhouse,* the Supreme Court held that a woman who was denied a promotion because she failed to conform to gender stereotypes had a cognizable claim for discrimination under Title VII because she was discriminated against "because of sex." *See*

---

[11] Regardless of the holding in *Texas*, KUSD's position taken in its motion to dismiss Plaintiff's Amended Complaint for failure to state a claim, incorporated here by reference, in and of itself supports a denial of the preliminary injunction. *See* Def.'s Brief in Support of Motion to Dismiss (Doc. 15) (arguing that Plaintiff's Title IX claim must be dismissed as Title IX does not encompass transgender status because: (1) The plain, unambiguous langue of Title IX extends only to gender, not to "transgender" status; (2) case law under Title VII supports the conclusion that Title IX's Prohibition of Discrimination "on the basis of sex" does not encompass transgender status; (3) Only Congress has the power to extend Title IX to encompass "transgender" status; and (4) The Dear Colleague Letter cannot compel the Court to concluded that transgender status falls within the ambit of title IX because: the Dear Colleague Letter does not have the force of law as it was not passed by formal rulemaking procedures; the Dear Colleague Letter is not entitled to *Chevron* deference as it is not a regulation passed pursuant to the APA; the Dear Colleague Letter is not entitled to *Auer* deference because Title IX is unambiguous on its face; and even if Title IX is ambiguous, the Dear Colleague Letter is plainly erroneous and inconsistent with Title IX and its implementing regulations, and therefore is not entitled to deference).

[12] Plaintiff's Amended Complaint is utterly devoid of any allegations of sex-stereotyping. The Motion for Preliminary Injunction is the first time Plaintiff has attempted to manipulate the Title IX claim into one that fits under *Price Waterhouse*.

10

*Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 97 F. Supp. 3d 657, 679 (W.D. Pa. 2015).[13]

No sex-stereotyping case, and none of the cases cited by Plaintiff, stands for the broad proposition that transgendered status is *per se* protected under Title IX. *See Johnston*, 97 F. Supp. 3d at 680. Specifically, courts have declined to adopt an expansive interpretation of "sex" that would include transsexuals as a protected class. *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir. 2007). "Even the Sixth Circuit, which extended protection to transsexuals under the *Price Waterhouse* theory . . . explained that an individual's status as a transsexual should be irrelevant to the availability of Title VII protection." *Id.* (citing *Smith v. City of Salem, Ohio*, 378 F.3d 566, 574 (6th Cir. 2004)); *see also Sommers v. Budget Mktg., Inc.*, 667 F.2d 748, 749-50 (8th Cir. 1982) (holding that "Title VII coverage did not extend to those discriminated against because of their transsexuality"); *Voyles v. Ralph K. Davies Med. Ctr.*, 403 F. Supp. 456, 457 (N.D. Cal. 1975), *aff'd,* 570 F.2d 354 (9th Cir. 1978) (stating that "employment discrimination based on one's transsexualism is not, nor was intended by the Congress to be, proscribed by Title VII").

Rather than recognizing *per se* protection for transgender status, sex-stereotyping claims are based on sex stereotypes connected to gender based behaviors, mannerisms, and appearances. *See, e.g.*, *Glenn v. Brumby*, 663 F.3d 1312, 1318-19 (11th Cir. 2011) (reviewing cases and finding gender stereotypes to include "wearing jewelry that was considered too effeminate, carrying a serving tray too gracefully, or taking too active a role in child-rearing"); *Smith*, 378 F.3d at 572 (explaining that plaintiff's "complaint sets forth the conduct and mannerisms . . . [that] did not conform with his employers' and co-workers' sex stereotypes of how a man should look and

---

[13] *Johnston* presented a substantially similar set of facts to the present case, where the District Court for the Western District of Pennsylvania dismissed a transgendered college student's claims under the Equal Protection clause and Title IX for failure to state a claim upon which relief can be granted. 97 F. Supp. 3d at 683. Plaintiff does not address *Johnston*.

11

behave," including plaintiff's mannerisms, appearance, conduct, and behaviors). These types of cases emerged when courts began to recognize claims from gay, lesbian, bisexual, and transgender employees who framed their Title VII sex discrimination claims in terms of discrimination based on gender non-conformity. Nevertheless, "these claims tended to be successful only if those employees could carefully cull out the gender non-conformity discrimination." *Hively v. Ivy Tech Cmty. Coll., S. Bend*, No. 15-1720, 2016 WL 4039703, at *5 (7th Cir. July 28, 2016).[14]

Plaintiff's attempt to invoke sex stereotyping should be recognized for what it is: Just like in *Johnston*, it is an attempt to fabricate a sex-stereotyping claim where none exists. Plaintiff merely offers the conclusory statement that "KUSD has treated him differently from other boys because he does not conform to their traditional notions of what a boy should be: one who was assigned the 'male' at birth and who has certain physical characteristics, including male genitals and secondary sex characteristics." Pltf.'s Memo. of Law (Doc. 11) at 16-17. In reality, however, Plaintiff was subject to a policy that relies solely on the birth sex of the student, not any kind of gender stereotype. KUSD required Plaintiff to use the women's bathroom solely because Plaintiff was born a female and has female genitalia. This is not what the law considers sex-stereotyping. As stated in *Johnston*:

> Plaintiff has not alleged that Defendants discriminated against him because of the way he looked, acted, or spoke. Instead, Plaintiff alleges only that the University refused to permit him to use the bathrooms and locker rooms consistent with his gender identity rather than his birth sex. Such an allegation is insufficient to state a claim for discrimination under a sex stereotyping theory.

*Johnston*, 97 F. Supp. 3d at 680; *see, e.g.*, *Eure v. Sage Corp.*, 61 F.Supp. 3d 651, 661 (W.D. Tex. 2014) (stating that "courts have been reluctant to extend the sex stereotyping theory to cover

---

[14] A copy of *Hively v. Ivy Tech Cmty. Coll., S. Bend*, No. 15-1720, 2016 WL 4039703 (7th Cir. July 28, 2016), is attached as Def.'s Ex. 6.

12

circumstances where the plaintiff is discriminated against because the plaintiff's status as a transgender man or woman, without any additional evidence related to gender stereotype non-conformity"); *Etsitty*, 502 F.3d at1224 (maintaining that *Price Waterhouse* does not require "employers to allow biological males to use women's restrooms. Use of a restroom designated for the opposite sex does not constitute a mere failure to conform to sex stereotypes"); *Johnson v. Fresh Mark, Inc.*, 337 F.Supp. 2d 996, 1000 (N.D. Ohio 2003) *aff'd,* 98 Fed. Appx. 461 (6th Cir. 2004) (finding no discrimination where employer did not require plaintiff to conform her appearance to a particular gender stereotype, but instead only required plaintiff to conform to the accepted principles established for gender-distinct public restrooms); *Schroer v. Billington,* 577 F. Supp. 2d 293, 304 (D.D.C. 2008) (stating that a sex-stereotyping "claim must actually arise from the employee's appearance or conduct and the employer's stereotypical perceptions").

Plaintiff makes no allegations of discrimination based on the manner in which Plaintiff looked, acted, or spoke. As did the University in *Johnston*, KUSD has permitted Plaintiff to live in conformance with the male gender identity in all material respects, with the one exception of the policy regarding bathrooms and overnight accommodations. *See Johnston*, 97 F. Supp. 3d at 681. Plaintiff does not allege harassment or discrimination because of dressing, speaking, or behaving like a man, or not dressing, acting, or speaking like a woman. *See id.* For example, as the plaintiff in *Johnston* was permitted to enroll in a men's weight training course, *see id.*, here, Plaintiff was allowed to compete on the boy's tennis team. *See* Pltf.'s Memo. of Law (Doc. 11) at 1. Plaintiff was also allowed to run for prom king. *Id.* at 7.

In *Johnston*, the District Court held that the University's policy requiring students to use the bathroom that corresponds with their birth sex was not sex-stereotyping:

> the University simply classified him based on his birth sex and prohibited him
> from entering sex-segregated spaces based on that classification, for the sole

13

purpose of enforcing its policy of sex-segregated bathrooms and locker rooms. Plaintiff argues that Defendants treated him differently from other males because he was transgender. This contention is simply inconsistent with his other allegations that the University permitted him, without harassment or discrimination, to dress like a man, act like a man, change his name to reflect his male gender, and enroll in classes designated for males. Plaintiff's sole contention of discrimination is that UPJ forbade him from using University bathrooms and locker rooms consistent with his male gender identity rather than his female birth sex. This allegation simply does not constitute a claim for sex stereotyping.

*Id.* at 681.

The *Johnston* court's reasoning is equally forceful in the present case. As in *Johnston*, KUSD has prohibited Plaintiff from using the men's bathroom for the sole purposes of enforcing its policy of sex-segregated bathrooms. Thus, Plaintiff cannot "cull out" a gender non-conformity discrimination claim when there is none.

**B.     Plaintiff's Equal Protection Challenge Has No Likelihood Of Success Because Requiring Students To Use Facilities That Correspond With Their Biological Gender Is Rationally And Substantially Related To The Legitimate And Important Interest Of Respecting The Privacy Rights Of All Students.**

In analyzing an Equal Protection claim the level of scrutiny applied by a court varies based upon the classification that is invoked. For example, where a classification is based upon race, alienage, or national origin, courts have found that these factors are so seldom relevant to the achievement of any legitimate state interest that they are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985). Conversely, where no fundamental right or suspect classification is at issue, the governmental action is presumed to be valid and is evaluated under the rational-basis standard of review. *Smith v. City of Chicago*, 457 F.3d 643, 650 (7th Cir. 2006). Under the rational basis standard, "courts presume the constitutionality of the government's classification and it will not be set aside if any

14

state of facts reasonably may be conceived to justify it." *Patrick v. Raemisch*, 550 F. Supp. 2d 859, 864 (W.D. Wis. 2008) (citing *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir.1992)).

Here, the classification invoked by Plaintiff is that of being transgendered. Being transgendered has never been recognized as a suspect class. Thus, KUSD's policy of requiring students to use restrooms, locker rooms, and overnight accommodations that correspond to their birth gender is presumed to be constitutionally permissible and it will not be set aside if any state of facts reasonably may be conceived to justify it.

> i. *Being "transgendered" is not a suspect classification and any rational basis justifies KUSD's policies.*

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendants deprived him or her of a right secured by the Constitution or laws of the United States, and that the defendants acted under color of state law. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1009 (7th Cir. 2000). Plaintiff invokes the Equal Protection Clause of the Fourteenth Amendment as an alleged right that has been deprived. The Fourteenth Amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV. In order to establish an equal protection violation, a plaintiff must show that the defendants: (1) treated him or her differently from others who were similarly situated, and (2) intentionally treated him or her differently because of his or her membership in the class to which he or she belonged. *See Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002).

Courts have been very reluctant to create new suspect classes. *See City of Cleburne*, 473 U.S. at 441. The United States Supreme Court has <u>never</u> recognized transgender as a suspect classification under the Equal Protection Clause. *See Johnston*, 97 F. Supp. 3d at 668. The Seventh

15

Circuit has also never recognized transgender as a suspect classification. Accordingly, this Court should follow the Supreme Court's admonition that courts should not create new suspect classifications. *See City of Cleburne*, 473 U.S. at 441; *see also Etsitty*, 502 F.3d at 1227-28 (maintaining that transsexual is not a protected class under the Fourteenth Amendment); *Brown v. Zavaras*, 63 F.3d 967, 970-71 (10th Cir. 1995) (holding that transsexuals are not a protected class); *Doe v. Alexander*, 510 F. Supp. 900, 904 (D. Minn. 1981) (same).

    ii.    *Because being transgendered has never been recognized as a suspect classification, KUSD's policy is presumed to be rational and cannot be set aside because there are facts that reasonably may be conceived of to justify it.*

To state an equal protection claim governed by rational basis review, a plaintiff's factual allegations should suggest some basis "sufficient to overcome the presumption of rationality that applies to government classifications." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 639 (7th Cir. 2007) (citing *Wroblewski*, 965 F.2d at 460). If a rational basis for the government's actions remains "conceivable and plausible" in the face of plaintiff's allegations, plaintiff's equal protection claim should be dismissed for failure to state a claim. *Id.* The challenging party has the burden to "negative every conceivable basis which might support it." *Heller v. Doe by Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2643, 125 L. Ed. 2d 257 (1993) (internal citations omitted).

    iii.    *Respecting the privacy rights of all students is conceivable and plausible and Plaintiff fails to overcome this presumption.*

Under a rational basis review, courts presume the constitutionality of the classification and it "will not be set aside if any state of facts reasonably may be conceived to justify it." *Patrick*, 550 F. Supp. 2d at 864. Here, KUSD's policy of requiring students to use restrooms, locker rooms,

16

and overnight accommodations that correspond to their birth gender is justified by the need to provide privacy to all students. This reasoning is rational and cannot be overcome by Plaintiff.

The right to privacy is a longstanding fundamental right under the Constitution. *See Quilici v. Vill. of Morton Grove*, 695 F.2d 261, 280 (7th Cir. 1982) ("The right to privacy is one of the most cherished rights an American citizen has; the right to privacy sets America apart from totalitarian states in which the interests of the state prevail over individual rights."). The rationale behind requiring students to use facilities that correspond to their birth gender in order to provide privacy to all students has also been upheld by multiple courts. *See Johnston*, 97 F. Supp. 3d at 669-70 (citing *Etsitty*, 502 F.3d at 1224; *Causey v. Ford Motor Co.,* 516 F.2d 416 (5th Cir. 1975)). "Across societies and throughout history, it has been commonplace and universally accepted to separate public restrooms, locker rooms, and shower facilities on the basis of biological sex in order to address privacy and safety concerns arising from the biological differences between males and females." *Grimm*, 822 F.3d at 734 (Niemeyer, Circuit Judge, concurring in part and dissenting in part). "An individual has a legitimate and important interest in bodily privacy such that his or her nude or partially nude body, genitalia, and other private parts are not exposed to persons of the opposite biological sex" and "courts have consistently recognized that the need for such privacy is inherent in the nature and dignity of humankind." *Id.* at 734-35 (citing *Doe v. Luzerne Cnty.*, 660 F.3d 169, 176-77 (3d Cir. 2011); *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008); *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 604 (6th Cir. 2005); *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981)).

Here, KUSD acknowledges its students' constitutional right to perform personal bodily functions outside the presence of members of the opposite gender. Likewise, requiring students to room with students who have the same birth gender during an overnight school sanctioned event

17

protects the same legitimate interest that students have in undressing and performing personal bodily functions outside the presence of the opposite gender. *See Johnston*, 97 F. Supp. 3d at 669-70. Students at KUSD have the right to use the bathroom to perform personal bodily functions without the presence of members who do not share their birth gender. This reason is presumptively constitutional because this rational reason is "conceivable and plausible" in light of Plaintiff's allegations. Thus, Plaintiff's equal protection claim fails as a matter of law. *See St. John's United Church of Christ*, 502 F.3d at 639.

> iv. *Even under a heightened intermediate review, Plaintiff still cannot succeed; requiring students to use the bathroom that corresponds to their birth gender is substantially related to the important interest in respecting the constitutionally protected right of privacy of KUSD's students.*

Even if a heightened standard of review were to apply in this case, Plaintiff's claim cannot succeed as the policy of segregating bathrooms, locker rooms, and overnight accommodations on the basis of birth gender is "substantially related to a sufficiently important government interest." *Johnston*, 97 F. Supp. 3d at 669. The Court in *Johnston* aptly explained why segregating on the basis of birth gender does not violate the Equal Protection Clause:

> The Supreme Court has acknowledged that not all classifications based on sex are constitutionally impermissible: 'The heightened review standard our precedent establishes does not make sex a proscribed classification . . . Physical difference between men and women, however, are enduring: '[t]he two sexes are not fungible; a community made up exclusively of one [sex] is different from a community composed of both.'' *United States v. Virginia*, 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (quoting *Ballard v. United States*, 329 U.S. 187, 193, 67 S.Ct. 261, 91 L.Ed. 181 (1946)); *see also Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ('[T]he statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny. . .'). As such, **separating students by sex based on biological considerations—which involves the physical differences between men and women—for restroom and locker room use simply does not violate the Equal Protection Clause**. Thus, 'while detrimental gender classifications by government often violate the Constitution, they do not always do so, for the

18

reason that there are differences between males and females that the Constitution necessarily recognizes.' *Michael M. v. Superior Court of Sonoma Cnty.*, 450 U.S. 464, 478, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) (Stewart, J., concurring).

*Id.* at 670 (emphasis added).

Simply put, KUSD is applying a policy that respects and protects the privacy rights of <u>all</u> students. All students are treated equally under the policy. No student may use a bathroom that does not correspond to his or her birth gender. Even if an intermediate standard of review applied, KUSD's policy, which does not permit students with a birth gender of female, like Plaintiff, to perform personal bodily function in the male bathroom, or cohabitate with men in overnight lodging during school sanctioned trips, serves the important purpose of respecting and protecting the privacy rights of all students.

As much as the Plaintiff portrays that this policy is solely about Plaintiff, KUSD has the responsibility to consider the welfare, privacy, and protection of <u>all</u> of its students, not just Plaintiff. Plaintiff may truly believe that the male student body may not have any objections to Plaintiff using the men's bathroom, *see* Pltf.'s Memo. of Law (Doc. 11) at 1, but Plaintiff's requested relief stretches far beyond a personal request to use the men's bathroom. If Plaintiff's relief is granted, any student who <u>verbally</u> identifies being transgendered would be entitled to use any bathroom, locker room, or overnight accommodation, regardless of the other students' gender. Even without resorting to extreme hypotheticals regarding concerns of safety, it is a very realistic possibility that students will have their individualized sense of privacy violated by the presence of members of the opposite gender in their bathroom, locker room, or overnight accommodations. This invasion of privacy is enough to render the policy <u>substantially</u> related to an <u>important</u> interest. Therefore, even under intermediate scrutiny, Plaintiff's Equal Protection claim must be dismissed.

19

### III. PLAINTIFF HAS NOT DEMONSTRATED IRREPARABLE HARM AND NO ADEQUATE REMEDY AT LAW BECAUSE THE REQUESTED RELIEF WAS SIGNIFICANTLY DELAYED AND THERE CAN BE NO PRESUMPTION OF IRREPARABLE HARM.

A plaintiff seeking a preliminary injunction must show that it has "no adequate remedy at law," and that it will suffer "irreparable harm" if the preliminary injunction is denied. *S & S Sales Corp. v. Marvin Lumber & Cedar Co.*, 435 F. Supp. 2d 879, 883 (E.D. Wis. 2006) (citing *Roland Mach. Co. v. Dresser Indus. Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). "The absence of an adequate remedy at law is a precondition to any form of equitable relief." *Id.* "The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait until the end of trial to get that relief." *Id.* "Only if he will suffer irreparable harm in the interim— that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can he get a preliminary injunction." *Id.*

### A. Plaintiff's Excessive Delay In Moving For An Injunction Belies Any Claim For Irreparable Harm.

Excessive delay may counsel against a finding of irreparable harm if the plaintiff has failed to prosecute a claim for injunctive relief promptly, and if there is no reasonable explanation for the delay. *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 244 (D.D.C. 2014). "An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm." *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005). Courts will deny a preliminary injunction because excessive delay in seeking that relief belies "any legitimate claim of irreparable harm." *Foster v. Morgenthau*, No. 86 CIV. 2803 (SWK), 1986 WL 4693, at *1 (S.D.N.Y. Apr. 18, 1986)[15], *aff'd,* 801 F.2d 391 (2d Cir. 1986)

---

[15] A copy of *Foster v. Morgenthau*, No. 86 CIV. 2803 (SWK), 1986 WL 4693 (S.D.N.Y. Apr. 18, 1986), as attached as Def.'s Ex. 7.

(citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir.1985)). "[D]elay alone may justify the denial of a preliminary injunction when the delay is inexplainable in light of a plaintiff's knowledge of the conduct of the defendant." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013).

Here, Plaintiff has been contemplating this lawsuit from at least April 2016. The allegations contained in the Amended Complaint and in the Motion for Preliminary Injunction were set forth in the April 19, 2016, letter from Plaintiff's counsel to KUSD. *See* Turner Letter at 5 ("[T]he District must act promptly to put in place a policy that permits <u>all</u> transgender students to use facilities consistent with the student's gender identity."). KUSD responded and set forth the same position that it is taking now on April 26, 2016. *See* M&Z Letter at 2 ("The District is not . . . in a position to accept your demands that it immediately change its restroom policy that requires the use of sex segregated bathroom and locker room facilities based on students' natal or birth sex, rather than gender identity."). The April 19, 2016, letter demanded that KUSD take the very action that Plaintiff now seeks in the form of an injunction. *See* Turner Letter.

Plaintiff has known since April 19, 2016 that the 2016-2017 school year will begin in early September and that KUSD would not voluntarily honor the request to allow Plaintiff to unilaterally determine which restroom to use. Plaintiff inexplicably waited almost three months (July 19, 2016) to file a law suit, and further waited another month, until the eve of the school year (August 15, 2016), to file a motion for an injunction. Nothing has changed since April to render the perceived need for an injunction any more pressing.

Plaintiff appears to have waited until now to seek the requested relief in an attempt to artificially create an urgency to bolster claims of immediate irreparable harm. Plaintiff has offered nothing to justify this excessive delay. Plaintiff has no reasonable excuse for waiting at least three

21

months to move for an injunction, and such a delay belies any legitimate claim of irreparable harm. *See Boire v. Pilot Freight Carriers, Inc.*, 515 F .2d 1185, 1193 (5th Cir. 1975) (affirming denial of temporary injunctive relief where movant, among other things, delayed three months in making its request); *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995) (vacating preliminary injunction where movant waited four months to seek a preliminary injunction after filing suit); *Citibank*, *N.A*, 756 F.2d at 276 (ten week delay in seeking injunction undercut claim of irreparable harm); *Johnson Publ'g, Co., Inc. v. Willitts Designs Int'l, Inc.*, No. 98 C 2653, 1998 WL 341618, at *8 (N.D. Ill. June 22, 1998)[16] (maintaining that argument of irreparable harm is weak where the plaintiff waited four months to file its motion for preliminary injunction); *Stokley–Van Camp, Inc. v. Coca–Cola Co.*, No. 86 C 6159, 1987 WL 6300, at *3 (N.D. Ill. Jan. 30, 1987)[17] (denying "extraordinary remedy" of preliminary injunction because the plaintiff waited three months before filing action).

### B. Irreparable Harm Cannot Be Presumed For Claims Of The Violation Of Federal Statutes.

Plaintiff's claim that there is a presumption of irreparable harm when constitutional rights or civil rights are at issue is overgeneralized and inaccurate.[18] In fact, the Supreme Court had disapproved of the practice of presuming irreparable harm for federal statutory claims. *See* Anthony DiSarro, *A Farewell to Harms: Against Presuming Irreparable Injury in Constitutional*

---

[16] A copy of *Johnson Publ'g, Co., Inc. v. Willitts Designs Int'l, Inc.*, No. 98 C 2653, 1998 WL 341618 (N.D. Ill. June 22, 1998), is attached as Def.'s Ex. 8.

[17] A copy of *Stokley–Van Camp, Inc. v. Coca–Cola Co.*, No. 86 C 6159, 1987 WL 6300 (N.D. Ill. Jan. 30, 1987), is attached as Def.'s Ex. 9.

[18] Plaintiff cites the Seventh Circuit Case *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011), for the broad proposition that there is a presumption of irreparable harm when constitutional or civil rights are at issue. *Ezell* was decided in the context of a Second Amendment challenge and its discussion of presumptions was limited to the First and Second Amendment because they involve "intangible and un-quantifiable interests." *See id.* Here, Plaintiff has claimed that the harm at issue is tangible and quantifiable, resulting in physical and emotional injury.

*Litigation*, 35 HARV. J.L. & PUB. POL'Y 743, 773-74 (2012), *available at* http://www.harvard-jlpp.com/wp-content/uploads/2013/10/35_2_743_DiSarro.pdf (citing *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2757, 2759-60 (2010); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The Second Circuit has suggested that the prohibition of presumptions of irreparable harm for federal statutory claims should be extended to <u>all</u> types of claims that seek injunctive relief. *See Salinger v. Colting*, 607 F.3d 68, 77-78 (2d Cir. 2010) (stating that traditional principles of equity should be the presumptive standard for injunctions in any context). "[U]nless Congress intended a major departure from the long tradition of equity practice, a court deciding whether to issue an injunction must not adopt categorical or general rules or presume that a party has met an element of the injunction standard." *Id.* at 78 n.7 (internal citations omitted).

Specifically, in the educational context, the Eleventh Circuit held that a student seeking a preliminary injunction against a school's alleged violations of the Americans with Disabilities Act and Rehabilitation Act was <u>required</u> to demonstrate irreparable harm and was not entitled to a presumption. *See C.B. v. Bd. of Sch. Comm'rs of Mobile Co., AL*, 261 F. App'x 192, 194 (11th Cir. 2008). Moreover, the Seventh Circuit has instructed that "unless a statute clearly mandates injunctive relief for a particular set of circumstances, the courts are to employ traditional equitable considerations (including irreparable harm) in deciding whether to grant such relief." *Bedrossian v. Northwestern Mem. Hosp.*, 409 F.3d 840, 843 (7th Cir. 2005) (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311-12, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982)). In sum, a presumption of irreparable harm is not permitted when considering an injunction, and a plaintiff must affirmatively demonstrate a likelihood of irreparable harm. *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 999 (9th Cir. 2011). As a matter of law, Plaintiff is not entitled

23

to a presumption of irreparable harm.  Title IX does not provide a statutory right for injunctive relief.

Plaintiff's claim of alleged harm in the form of a fear of being stigmatized due to the involuntary disclosure of Plaintiff's transgender status to others and being subject to harassment or violence is completely without merit.[19]  Plaintiff's transgender status has already been repeatedly self-disclosed to the world.  The Amended Complaint publicly names Plaintiff and identifies that Plaintiff is transgendered.  Plaintiff and Plaintiff's lawyers have repeatedly identified Plaintiff by name to the media.  *See* http://www.cnn.com/2016/07/20/us/wisconsin-transgender-student-lawsuit/.  Even before the case was filed, Plaintiff publicly disclosed being transgendered, including details of Plaintiff's name and the school Plaintiff attended.  *See* http://petitions.moveon.org/sign/equal-rights-at-school.  Plaintiff has completely failed to demonstrate irreparable harm and a lack of an adequate remedy at law.

## IV.  EVEN IF PLAINTIFF COULD DEMONSTRATE IRREPARABLE HARM, THE LAWFUL IMPLEMENTATION OF TITLE IX CANNOT FORM THE PREDICATE FOR AN INJUNCTION.

Here, even if Plaintiff could prove the existence of irreparable harm, that harm alone is not justification for an injunction where KUSD has not violated the law.  If irreparable harm was not caused by a violation of the law, a preliminary injunction cannot issue.  *See Am. Mach. & Metals v. DeBothezat Impeller Co.*, 180 F.2d 342, 349 (2d Cir. 1950).

---

[19] As part of the requested injunctive relief, Plaintiff asks for KUSD to be enjoined from taking any action that "would reveal Plaintiff's transgender status to others at school, including through the use of any visible markers or identifiers (e.g., wristbands, stickers)."  Pltf.'s Motion for Preliminary Injunction (Doc. 10).  Plaintiff has made the allegation that "upon information and belief" KUSD intends to provide green wristbands to transgender students to monitor bathroom use.  Pltf.'s Amended Comp. (Doc. 12) at ¶¶80-83.  KUSD in fact has no such policy and denies that any such policy exists or had existed.  No employee of KUSD ever gave a wristband to any student.  Plaintiff has not provided any proof that a wristband policy exists or will be implemented in the future.  Such speculation cannot serve as the basis for irreparable harm.  *See Kimberly-Clark Worldwide, Inc. v. Tyco Healthcare Grp. LP*, 635 F. Supp. 2d 870, 880 (E.D. Wis. 2009).

The Code of Federal Regulations actually permits a school district to provide separate toilet, locker room, and shower facilities on the basis of students' gender. *See* 34 C.F.R. § 106.33 ("A recipient may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex."). The policy that Plaintiff complains of—requiring students to use the bathroom that corresponds with his or her birth gender—is specifically permitted under the law. Additionally, Plaintiff cannot point to any law that commands a school district to ignore the name listed on a student's birth certificate or which commands a school district to ignore the pronouns that are appropriate for a student's gender as listed on his or her birth certificate. Absent the ability to point to specific violations of law, Plaintiff's motion for a preliminary injunction cannot issue regardless of whether Plaintiff can point to irreparable harm.

## V. ASSUMING, *ARGUENDO*, THAT PLAINTIFF COULD MEET THE THRESHOLD REQUIREMENTS, A WEIGHING OF THE RESPECTIVE HARMS TIPS THE BALANCE IN FAVOR OF DENYING THE PRELIMINARY INJUNCTION.

While it is unnecessary for the Court to consider the additional injunction factors since Plaintiff has not met the threshold requirement, *see Am. Hosp. Ass'n v. Harris*, 625 F.2d at 1330-31, a balancing of the harms still weighs against granting an injunction. Courts consider whether the irreparable harm the applicant will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted. *Anderson*, 274 F.3d at 474-75.

A balancing of the respective harms weighs against granting an injunction because Plaintiff's alleged harms are unique and isolated to Plaintiff, while the harm to KUSD extends to all students[20] within the school district and the community at large. Plaintiff's alleged harms—

---

[20] KUSD's total student enrollment during the 2015-2016 school year was 22,160 students. *See* WI Dept. of Public Instruction, 2015-16 Public Enrollment (Def.'s Ex. 4).

depression, anxiety, migraines, dizziness, fainting, decreased academic performance, and possible disciplinary action during senior year—are limited to Plaintiff. In contrast, if the preliminary injunction is granted, KUSD, including parents and children in the school district will <u>all</u> suffer irreparable harm.

The requested injunction will have the effect of forcing policy changes, imposing financial consequences, and stripping KUSD of its basic authority to enact polices that the accommodate the need for privacy of all students. Moreover, because Plaintiff waited until the eve of the new school year to move for the requested relief, an injunction would provide KUSD with <u>no</u> time to make changes to KUSD facilities or to develop new policies to safeguard the privacy rights of <u>all</u> of its students. Granting the injunction would also place KUSD in the untenable position of being required to make policy changes to implement an interpretation of Title IX that the Federal Government has no power to enforce against it. *See Texas*, 2016 WL 4426495, at *17. In sum, putting KUSD in this position would constitute irreparable harm. *See Maryland v. King*, 133 S. Ct. 1, 3, 183 L. Ed. 2d 667 (2012) (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351, 98 S.Ct. 359, 54 L.Ed.2d 439 (1977) (Rehnquist, J., in chambers)) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

Compliance with the requested preliminary injunction will also put parents' constitutional rights in jeopardy. Depriving parents of any say over whether their children should be exposed to members of the opposite biological sex, possibly in a state of full or complete undress, in intimate settings deprives parents of their right to direct the education and upbringing of their children. *See Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000) (stating that it is the fundamental right of parents to make decisions concerning the care, custody, and control

26

of their children); *Meyer v. Nebraska*, 262 U.S. 390, 401, 43 S. Ct. 625, 627, 67 L. Ed. 1042 (1923) (acknowledging the right for parents to control the education of their children). Likewise, individual students will have their constitutionally protected right of privacy violated if forced to comply with the proposed injunction. *See Grimm*, 822 F.3d at 734-35 ("An individual has a legitimate and important interest in bodily privacy such that his or her nude or partially nude body, genitalia, and other private parts are not exposed to persons of the opposite biological sex" and "courts have consistently recognized that the need for such privacy is inherent in the nature and dignity of humankind."); *Doe*, 660 F.3d at 176-77 (3rd Cir. 2011) (concluding that a person has a constitutionally protected privacy interest in "his or her partially clothed body" and "particularly while in the presence of members of the opposite sex"); *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 132 F. Supp. 3d 736, 751 (E.D. Va. 2015), *rev'd in part, vacated in part,* 822 F.3d 709 (4th Cir. 2016) ("Not only is bodily privacy a constitutional right, the need for privacy is even more pronounced in the state educational system. The students are almost all minors, and public school education is a protective environment. Furthermore, the School Board is tasked with providing safe and appropriate facilities for these students.").

The potential irreparable harm facing KUSD far outweighs the individualized harms that Plaintiff alleges, and a balance of the equities favors denying the requested injunction. The granting of the injunction would strip KUSD of its authority to enact a bathroom, locker room, and overnight accommodation policy which is necessary to protect the basic expectations of bodily privacy of its students. *See Quilici*, 695 F.2d at 280. It is KUSD's responsibility to safeguard these privacy expectations for all students and the Dept. of Edu. is powerless to enforce its interpretation of Title IX against KUSD.[21]

---

[21] While the nature of the balancing of the harms differed in *Texas*, the Court did observe that: "Plaintiffs' harms in this regard outweigh those identified by Defendants, particularly since the Supreme Court stayed the Fourth

27

Therefore, the potential irreparable harm facing KUSD's students and parents at large outweighs the individualized, subjective harms alleged by Plaintiff.

## V.    THE PRELIMINARY INJUNCTION WILL HARM THE PUBLIC INTEREST.

"A preliminary injunction is an extraordinary remedy" and "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376-77, 172 L. Ed. 2d 249 (2008) (internal citations omitted). In other words, in assessing whether a preliminary injunction is warranted, a court must consider whether the moving party has demonstrated that the preliminary injunction will not harm the public interest. *Wisconsin Coal. for Advocacy, Inc.*, 131 F. Supp. 2d at 1044 (E.D. Wis. 2001). The public interest meaning "the consequences of granting or denying the injunction to non-parties." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

In considering the effect of the requested injunction on the broader public interest, the Court should consider the harm that would extend to other school districts in Wisconsin and across the nation. Granting the requested injunction would force school districts in Wisconsin and within the Seventh Circuit to contemplate whether they must change their policies and alter their facilities or risk being found out of compliance with Title IX by the Dept. of Edu. and risk losing their federal funding. Moreover, the *Texas* decision has made matters even more difficult for these school districts as the policy changes demanded by the Executive Branch cannot be enforced until the stay is lifted in the *Texas* case.

Furthermore, due to Plaintiffs delay in waiting until the end of August to bring the request for injunctive relief, a ruling from this Court could cause all of these school districts to be forced

---

Circuit's decision supporting Defendants' position, and a decision from the Supreme Court in the near future may obviate the issues in this lawsuit." *Texas*, 2016 WL 4426495, at *17.

to make these difficult decisions during the first weeks of the school year. This consideration could not have escaped the Supreme Court when it stayed the exact same injunction granted by the Fourth Circuit. *See Gloucester Cty. Sch. Bd.*, 136 S. Ct. at 2442. Thus, to grant the requested injunction would ultimately be harmful to the public at large.

## CONCLUSION

Plaintiff's preliminary injunction seeks to drastically alter the status quo in abrogation of the principle purpose articulated by the Supreme Court for granting preliminary injunctive relief. Moreover, Plaintiff cannot meet the threshold requirement for an injunction as Plaintiff does not have a high probability of success on the merits and has not demonstrate imminent irreparable harm and no adequate remedy in law. Even if Plaintiff had met this burden, the motion must still be denied as a balancing of the respective harms favors denial and granting the injunction would harm the public. For the reasons stated above, KUSD respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

Dated this 26th day of August, 2016.

MALLERY & ZIMMERMAN, S.C.
Attorneys for Defendants

By:    s/Ronald S. Stadler
Ronald S. Stadler
State Bar No. 1017450
Aaron J. Graf
State Bar No. 1068924
Jonathan E. Sacks
State Bar No. 1103204

731 North Jackson Street, Suite 900
Milwaukee, Wisconsin 53202-4697
telephone: 414-271-2424
facsimile: 414-271-8678
e-mail: rstadler@mzmilw.com
     agraf@mzmilw.com
     jsacks@mzmilw.com