# EXHIBIT B

*Kastl v. Maricopa Cty. Cmty. Coll. Dist.*,
2004 WL 2008954 (D. Ariz. 2004)

2004 WL 2008954
Only the Westlaw citation is currently available.
United States District Court,
D. Arizona.

Rebecca E. KASTL, Plaintiff,

v.

MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT, Defendant.

No. Civ.02–1531PHX–SRB.
|
June 3, 2004.

**Attorneys and Law Firms**

Randi A. Barnabee, Deborah A Smith & Co. LPA, Northfield Ctr, OH, for Plaintiff.

Joseph T. Clees, Esq., Pavneet Singh Uppal, Leah S. Smith, Bryan Cave LLP, Phoenix, AZ, for Defendant.

ORDER

BOLTON, J.

**\*1** This matter arises out of the termination of the employment of Plaintiff Rebecca E. Kastl ("Ms.Kastl") by Defendant Maricopa County Community College District ("MCCCD"). Plaintiff, who has been diagnosed with Gender Identity Disorder (GID), alleges that she is a biological female incorrectly assigned to the male sex at birth. She [1] claims that Defendant required her to use the men's restroom facilities and subsequently terminated her when she refused to comply. She alleges that this policy and her discharge constituted unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and Title IX of the Civil Rights Act of 1991, 20 U.S.C. §§ 1681 et seq. She also alleges that these actions by Defendant demonstrate a failure to reasonably accommodate her disability, GID, and therefore violate the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq. Finally, Plaintiff contends that the actions of Defendant occurred under color of law and in violation of 42 U.S.C. section 1983 (Section 1983).

[1] In conformity with Plaintiff's factual allegation that she is biologically female, the Court will refer to her by feminine pronouns.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant moves to dismiss Plaintiff's Second Amended Complaint in its entirety, arguing that Plaintiff cannot state a claim for relief under Title VII or Title IX because the designation of restroom use on the basis of possession of male or female genitalia is not unlawful sex discrimination. Defendant further contends that Plaintiff has failed to state sufficient factual and/or legal bases for her claims under the ADA and Section 1983. For the reasons that follow, Defendant's Motion to Dismiss (Doc. 30) is granted in part and denied in part.

I. BACKGROUND

Plaintiff Kastl was employed by Defendant MCCCD as an adjunct faculty member at Estrella Mountain Community College and she was also enrolled as a student of MCCCD. From birth, when Plaintiff was designated male following a neonatal genital examination, through the beginning of her employment by Defendant, Plaintiff lived and presented herself as a man. In or about July 2000, two psychologists diagnosed Plaintiffs with GID. [2] Since January 2001, Plaintiff

has lived and presented herself as a woman, and in February 2001, Plaintiff's personal physician determined her to be biologically female. Plaintiff then legally changed her traditionally masculine name to a traditionally feminine name and legally obtained a new Arizona driver's license indicating her sex as female.

[2]  Gender Identity Disorder, sometimes referred to as gender dysphoria, is defined as "the desire to be, or the insistence that one is, of the other sex," combined with "persistent discomfort about one's assigned sex or a sense of inappropriateness in the gender role of that sex." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* § 302.9 (2000).

Plaintiff continued to work and attend class at MCCCD during her transition from a male to a female presentation. Following the receipt of objections to Plaintiff's use of the women's restroom made by some minor students attending classes at MCCCD, Defendant issued a new restroom policy on October 5, 2001 that required Plaintiff and another transsexual [3] faculty member to use the men's restroom facilities until each provided proof that she had completed genital correction surgery, also known as sex reassignment surgery (SRS). [4] Defendant rejected Plaintiff's state-issued driver's license as proof of her female sex, pronouncing it "inconclusive and irrelevant." Plaintiff expressed to Defendant several other objections to the policy, including her fear of serious bodily harm as a result of usage of the men's restroom, invasion of privacy concerns, and selective enforcement of the policy's proof requirement. When Defendant discounted each concern despite Plaintiff's protestations, she refused to abide by the new policy. Defendant then terminated Plaintiff's employment on December 5, 2001.

[3]  Transsexualism, as defined by Plaintiff, is a general term referring to the desire to change sex and gender. "[S]ince transsexualism is a condition which results from GID's more acute manifestations, *a fortiori* all transsexuals must be presumed to suffer seriously from GID." (Pl.'s Second Amended Compl. at 10.)

[4]  Plaintiff has not pled facts which indicate whether or not she has had SRS.

**\*2**  Plaintiff filed suit in this Court on August 12, 2002 following the receipt of a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC). In the wake of several amendments to Plaintiff's initial complaint and Plaintiff's response to this Court's Order for a More Definite Statement, Defendant filed its pending Motion to Dismiss Plaintiff's Second Amended Complaint on October 24, 2003.

## II. LEGAL STANDARDS AND ANALYSIS

Defendant moves to dismiss Plaintiff's Second Amended Complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6). Dismissal for insufficiency of a complaint is proper if, on its face, the complaint fails to state a claim. *Lucas v. Bechtel Corp.,* 633 F.2d 757, 759 (9th Cir.1980). A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984).

In determining whether a complaint states a valid claim, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). The complaint should not be dismissed unless it appears beyond doubt that there is "no set of facts" which would entitle the plaintiff to relief under the asserted claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Balistreri,* 901 F.2d at 701.

### A. Title VII

Defendant allegedly violated Title VII's prohibition of sex discrimination when it required Plaintiff, a biological female, to use the men's restroom until such time as she provided proof that she did not have male genitalia, and subsequently terminated Plaintiff upon her refusal to comply with this directive. Rather than operating from the set of facts offered by Plaintiff in her complaint, particularly the allegation that she is biologically female, Defendant focuses its arguments on the reasons why a biological male presenting as a female legitimately may be required to use a men's restroom. Such arguments are inapposite where the Court must take the allegations of material fact in Plaintiff's Second Amended Complaint as true. *Clegg,* 18 F.3d at 754. For the purposes of this 12(b)(6) motion to dismiss, Plaintiff is a biological female. [5] The pertinent inquiry therefore asks not whether Defendant must allow biological males to use the women's restroom, but whether Title VII permits an employer to require a biologically female employee believed to possess stereotypically male traits to provide proof of her genitalia or face consignment to the men's restroom. The Court finds that these allegations state a claim under Title VII's prohibition on sex discrimination.

| | |
|---|---|
| [5] | Defendant is careful not to admit that Plaintiff is biologically female. It contends that statements that Plaintiff was born with male genitalia and that Plaintiff is biologically female conflict such that no factfinder could render a verdict in favor of Plaintiff. Plaintiff argues, however, that designation as a biological female and possession of male genitalia are not mutually exclusive states. The Court cannot say that there is no set of facts which might support this conclusion. Medical evidence suggests that the appearance of genitals at birth is not always consistent with other indicators of sex, such as chromosomes. Julie A. Greenberg, *Defining Male and Female: Intersexuality and the Collision Between Law and Biology,* 41 Ariz. L.Rev. 265, 271–74 (1999); *see also* Phyllis Randolph Frye, The *International Bill of Gender Rights vs. the Cider House Rules: Transgenders Struggle with the Courts over What Clothing They Are Allowed to Wear on the Job, Which Restrooms They Are Allowed to Use on the Job, Their Right to Marry, and the Very Definition of Their Sex,* 7 Wm. & Mary J. Women & L. 133, 167–69 (2000) (discussing Androgen Insensitivity Syndrome, which results in the pairing of female genitals and an XY chromosome pattern, and citing medical evidence of at least seven chromosome patterns other than XX and XY); Jenifer M. Ross–Amato, *Transgender Employees & Restroom Designation—Goins v. West Group, Inc.,* 29 Wm. Mitchell L.Rev. 569, 593 n.147 (2002). |

It is well settled that Title VII's prohibition on sex discrimination encompasses discrimination against an individual for failure to conform to sex stereotypes. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989), *Nichols v. Azteca Restaurant Enterprises, Inc.,* 256 F.3d 864, 874 (9th Cir.2001) (holding that harassment for failure to conform to a male stereotype violates Title VII), *Schwenk v. Hartford,* 204 F.3d 1187, 1201 (9th Cir.2000) ("Discrimination because one fails to act in the way expected of a man or woman is forbidden under Title VII.") "We are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group," *Price Waterhouse,* 490 U.S. at 251, 109 S.Ct. at 1791, whether that stereotype relates to an individual's behavior, appearance, or anatomical features. The presence or absence of anatomy typically associated with a particular sex cannot itself form the basis of a legitimate employment decision unless the possession of that anatomy (as distinct from the person's sex) is a bona fide occupational qualification (BFOQ). [6] Therefore, neither a woman with male genitalia nor a man with stereotypically female anatomy, such as breasts, may be deprived of a benefit or privilege of employment by reason of that nonconforming trait.

| | |
|---|---|
| [6] | The BFOQ defense permits an employer to discriminate on the basis of sex where sex is a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e-(2)(e)(1). Defendant does not contend that Plaintiff's sex is a BFOQ, nor does it claim that possession of particular genitals is necessary to the performance of her job. |

**\*3** Application of this rule may not be avoided merely because restroom availability is the benefit at issue. *See Baker v. John Morrell & Co.,* 220 F.Supp.2d 1000, 1011, 1014 (N.D.Iowa 2002) (holding that denial of equal access to bathroom facilities alters the terms and conditions of employment); *cf. DeClue v. Central Illinois Light Co.,* 223 F.3d 434, 436 (7th Cir.2000) (discussing absence of restrooms, which deters women from employment, as potential violation of Title VII). As Defendant notes, courts have recognized the legitimacy of restrooms segregated on the basis of sex. *Cf. Goins v. West Group,* 635 N.W.2d 717, 723 (Minn.2001) (noting that designation of restroom use according to "biological gender" is a traditional and accepted practice); *Norwood v. Dale Maint. Sys., Inc.,* 590 F.Supp. 1410, 1421 (N.D.Ill.1984) (acknowledging fundamental nature of concerns about bodily privacy with respect to the opposite sex); *Brooks v. ACF Indus., Inc.,* 537 F.Supp. 1122, 1128–32 (S.D.W.Va.1982) (recognizing privacy interests of employees in maintaining single-sex restrooms). However, to create restrooms for each sex but to require a woman to use the men's restroom if she fails to conform to the employer's expectations regarding a woman's behavior or anatomy, or to require her to prove her conformity with those expectations, violates Title VII. Thus, Plaintiff has alleged a set of facts sufficient to create an issue for trial.

Defendant argues that Plaintiff fails to state a claim for sex discrimination because Defendant's restroom policy segregates restroom use by genitalia, not by sex. Segregating restroom use by genitalia is permissible, it maintains, and in its view the simple enforcement of such a legitimate *genitalia*-based policy cannot constitute *sex* discrimination. Regardless of the merits of this argument, [7] Defendant has merely created a factual dispute regarding the nature of its restroom policy. Plaintiff's pleadings describe a policy which mandated her use of the "men's restroom," not the "restroom for individuals with male genitalia." Plaintiff contends that she was prevented from using the restroom designated for the female sex. Whether Defendant's policy actually segregated restroom use by sex or by genitalia is not for the Court to decide at this stage; neither party has presented evidence of the policy itself, and any such evidence properly would be considered by a finder of fact. Defendant's Motion to Dismiss must be denied with respect to Plaintiff's Title VII claim. [8]

| | |
|---|---|
| [7] | The Court notes that Defendant exclusively cites cases legitimizing sex-based segregation of restrooms in support of its genitalia-based policy, despite its attempts to distinguish the two types of policies from each other. |
| [8] | Defendant has also argued that Plaintiff failed to state a claim for constructive discharge under Title VII. Despite Plaintiff's limited use of the phrase "constructive discharge" in her Second Amended Complaint, the majority of her references to the cessation of her employment unambiguously state that Defendant "terminated" her employment. (Pl.'s Second Amended Compl. ¶¶ 1, 24, 32.) A constructive discharge occurs when a person *resigns* his or her job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable. *Draper v. Couer Rochester, Inc.,* 147 F.3d 1104, 1110 (9th Cir.1998); *MacLean v. State Dept. of Educ.,* 195 Ariz. 235, 986 P.2d 903, 912 (Ariz.Ct.App.1999). Plaintiff has failed to establish that she was not fired but that she resigned her employment, a crucial element of a constructive discharge claim. Therefore, to the extent that she intended to pursue a claim of sex discrimination via constructive discharge, not termination, her claim is dismissed. |

### B. Title IX

Defendant's arguments in favor of dismissal of Plaintiff's Title IX sex discrimination claim mirror those offered with respect to Plaintiff's Title VII claims. By Defendant's own admission, the same standards apply to discrimination claims brought under Titles VII and IX. *See Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 75, 112 S.Ct. 1028, 1037, 117 L.Ed.2d 208 (1992); *see also Weinstock v. Columbia University,* 224 F.3d 33, 42 (2d Cir.2002). Therefore, the reasons

previously cited by the Court for the denial of Defendant's Motion to Dismiss with respect to Plaintiff's Title VII claims apply with equal vigor to the denial of the Motion to Dismiss with respect to Plaintiff's Title IX claims.

### C. ADA

**\*4** Plaintiff's claims under the ADA center on Defendant's alleged failure to accommodate her disability (whether established or merely perceived) during her employment and Defendant's alleged termination of her employment on the basis of that disability. Defendant urges dismissal of the ADA claim on three grounds. First, Defendant argues that Plaintiff's ADA claim must be dismissed to the extent that Plaintiff seeks to recover for Defendant's failure to accommodate any perceived disability, rather than an established disability, because the ADA requires employers to accommodate only employees who are in fact disabled. Second, Defendant maintains that its failure to accommodate Plaintiff's actual disability, GID, does not violate the ADA since gender identity disorders not resulting from physical impairments are specifically excluded from the coverage of the Act. Lastly, should the Court find that Plaintiff's GID falls within the impairments covered by the Act, Defendant suggests that Plaintiff's allegations still must fail to state a claim, for failure to accommodate an impairment is only unlawful where the impairment substantially limits a major life activity, and no such limitation has been alleged. The Court will address each argument in turn.

The ADA prohibits employer discrimination against employees on the basis of disability. 42 U.S.C. §§ 12101 *et seq.* According to the ADA, an employee is disabled if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," has "a record of such an impairment," or is "regarded as having such an impairment." 42 U.S.C. §§ 12102(A)-(C). While employers are subject to legal action for discriminating against both employees who are impaired and those whom the employer merely regards as impaired, 42 U.S.C. § 12112, employers are only required to *accommodate* the disabilities of employees falling into the former category. *Kaplan v. City of North Las Vegas,* 323 F.3d 1226, 1232 (9th Cir.2003); *see also Webber v. Strippit,* 186 F.3d 907, 916–17 (8th Cir.1999). Although employers might do well to assist employees whose impairments don't meet the "substantial limitation" test, the Ninth Circuit has recognized that an employer's limited resources might not support the accommodation of every employee. *Kaplan,* 323 F.3d at 1232. Thus, Plaintiff's claim arising out of Defendant's alleged failure to accommodate her as a "regarded as" employee must be dismissed for failure to state a claim, although her claim of discriminatory termination could survive Defendant's Motion to Dismiss as a matter of law even if Defendant only regarded her as disabled.[9]

---

9   In order for Plaintiff's claim for discriminatory termination as a "regarded as" employee to survive, Plaintiff must allege that Defendant not only regarded her as impaired, but impaired in a way which substantially limited a major life activity. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 2149–50, 144 L.Ed.2d 450 (1999). Plaintiff's ADA claim appears to be limited to a failure to accommodate her; however, to the extent that she also intends to assert an ADA claim for her termination, she has not alleged that Defendant regarded her as an employee substantially limited in her ability to work. She argues that Defendant believed her to be a transsexual, *a fortiori* regarding her as disabled. Contrary to Plaintiff's assertion, the leap from recognizing an individual as a transsexual to believing that individual to be disabled is by no means automatic. *Cf. Gorbitz v. Corvilla, Inc.,* 196 F.3d 870, 882 (7th Cir.1999) (finding that employer's knowledge of auto accident and resulting medical appointments was insufficient to show that employer regarded employee as disabled). Plaintiff has failed to allege that Defendant believed her transsexualism rendered her substantially limited in her ability to work. She states only that Defendant's perception of her as disabled led to a substantial limitation of her ability to work (Pl.'s Second Amended Compl. ¶ 38). Therefore, any claim pled by Plaintiff with respect to Defendant's termination of her as a "regarded as" employee must be dismissed for insufficient factual allegations.

Plaintiff alleges not only that Defendant regarded her as impaired, but also, in the alternative, that she meets the definition of disability under section 12102(A). Her GID, she argues, is a physical impairment which substantially limits her ability to maintain employment. Under this theory, Defendant acted unlawfully when it failed to accommodate her actual disability and terminated her on the basis of that disability. As Defendant points out, transsexualism and "gender identity disorders not resulting from physical impairments" are specifically excluded from the definition of disability by statute. 42 U.S.C. § 12211(b)(1). Assuming *arguendo* that Plaintiff's GID is the result of a physical impairment, and would therefore fall within the ADA's coverage, Plaintiff still must allege that her GID substantially limits at least one major life activity. *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002), *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 365–66 (9th Cir.1996). Plaintiff concedes that she "made no claim to have had any disability which would substantially limit her ability to earn a living wage until such time as Defendant regarded her as having a gender identity-related disability and terminated her employment," (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss Pl.'s Second Amended Compl. at 16) yet attempts to conjure a substantial limitation out of Defendant's actions, rather than her own condition. Defendant's act of termination created Plaintiff's limitation, she argues, implying that her inability to retain her position with Defendant equates to a substantial limitation upon her ability to maintain any employment whatsoever.

**\*5** The Court must reject this argument as a matter of law. In order for an individual to be substantially limited in the major life activity of working, her impairment must prevent her from working a class of jobs or a range of jobs in different classes. *Toyota Motor Mfg.,* 534 U.S. at 200, 122 S.Ct. at 693, *citing Sutton,* 527 U.S. at 492, 119 S.Ct. at 2139; *Holihan,* 87 F.3d at 366, *citing* 29 C.F.R. § 1620.3(j)(3); *see also Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 (5th Cir.1995). Plaintiff neglects to explain how Defendant's refusal to accommodate her or retain her as an employee bars her from other similar work, and the Court fails to see how a single employer's reaction to a physical impairment could alter the nature or severity of the impairment itself. Since Plaintiff has not alleged substantial limitation in her ability to work,[10] her ADA claim based upon actual disability must be dismissed.

| | |
|---|---|
| 10 | Despite the parties' extensive briefing on the issue, the Court finds it unnecessary to reach whether Plaintiff's GID constitutes a physical impairment within the coverage of the ADA, or whether it would be excluded as transsexualism under 42 U.S.C. section 12211(b)(1). |

### D. Section 1983

To state a claim under 42 U.S.C. section 1983, a plaintiff must assert (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir.2002); *Balistreri,* 901 F.2d at 699. Plaintiff alleges that her rights to substantive and procedural due process, privacy, freedom from unreasonable search and seizure, security, equal protection, and freedom of speech and self-expression have been violated. The parties do not dispute that the acts in question were committed under color of law. Thus, so long as Plaintiff has adequately alleged the violation of constitutionally-protected rights, her claims survive under Rule 12(b)(6).

#### 1. Substantive Due Process and the Right to Privacy

By requiring Plaintiff to provide proof of sex reassignment surgery before granting permission for her to use the women's restroom, Defendants allegedly violated Plaintiff's fundamental right to privacy. The right to privacy is derivative of the Fourteenth Amendment's guarantee of substantive due process, among other constitutional provisions, although it is not expressly guaranteed by the Constitution. *See Whalen v. Roe,* 429 U.S. 589, 598–99 n. 23–25, 97 S.Ct. 869, 876 n. 23–25, 51 L.Ed.2d 64 (1977). It has been held to encompass information about one's medical conditions, *Yin v. California,* 95 F.3d 864, 870, 870 n. 11 (9th Cir.1996), *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994), including transsexualism, *Powell v. Schriver,* 175 F.3d 107, 111–12 (2d Cir.1999), information about sexual preference and orientation, *Hirschfeld v. Stone,* 193 F.R.D. 175, 186 (S.D.N.Y.2000), and one's body itself, *York v. Story,* 324 F.2d 450, 455 (9th Cir.1963) ("We

cannot conceive of a more basic subject of privacy than the naked body."). More specifically, it includes the right to privacy with respect to one's genitalia. *See Granger v. Klein,* 197 F.Supp.2d 851, 871 (E.D.Mich.2002) (recognizing "the private nature of the genital region" in finding that allegations of publication by the government of a photo displaying a high school student's genitals state a claim for constitutional invasion of privacy). Defendant, in demanding details about Plaintiff's genitalia, has implicated Plaintiff's Fourteenth Amendment right to privacy in personal information. *Whalen v. Roe,* 429 U.S. at 599–600, 97 S.Ct. at 869 (describing two kinds of privacy interests: informational privacy and decisional privacy); *see also Doe v. City of New York,* 15 F.3d at 267.

**\*6** As a matter of law, however, Plaintiff's right to privacy may be legitimately restricted if the government has a compelling state interest in doing so. *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 929, 112 S.Ct. 2791, 2847, 120 L.Ed.2d 674 (1992) (plurality). Defendant argues that it has a compelling interest in enforcing sex-segregated use of its restrooms in order to preserve the safety and privacy of all users. While Defendant may have an interest in maintaining its restroom designations, *see, e.g., Norwood,* 590 F.Supp. at 1421; *Brooks,* 537 F.Supp. at 1128–32, Defendant's demand for information regarding the state of Plaintiff's genitalia is neither necessary nor narrowly tailored to maintaining these sex-based designations. *Casey,* 505 U.S. at 929, 112 S.Ct. at 2847 (requiring that restriction be both necessary and narrowly tailored to the achievement of the compelling interest). Plaintiff has stated that she is a biological woman. She lives and presents herself as a woman, and offered her state-issued driver's license to Defendant as proof of her biological sex, yet Defendant allegedly refused her access to the women's restroom until she provided further proof that she did not possess male genitalia. Defendant is alleged to have required such proof only of Plaintiff and one other individual, also a transsexual. Were this information truly necessary to preserve the single-sex nature of Defendant's restrooms and the safety and privacy of their users, surely it would be sought from each person prior to granting restroom access.

In addition, Defendant's chosen method of ensuring compliance with its sex-based policy is not narrowly tailored. As discussed earlier, genitalia is not the sole indicator of sex. *See infra* note 5. While information concerning an individual's genitalia may assist Defendant in assigning that person to the restroom of a particular sex, reliance on that information to the exclusion of other offers of proof might lead to inaccurate determinations of sex. Obtaining information about Plaintiff's genitalia when her sex has otherwise been established therefore cannot be said to be narrowly tailored to the Defendant's interest in determining sex for restroom use purposes. Since the Court cannot say that no set of facts exists which would state a claim for violation of Plaintiff's fundamental right to privacy, Defendant's Motion to Dismiss is denied with respect to Plaintiff's Section 1983 privacy claim.

2. Fourth Amendment Search and Seizure

Plaintiff has conceded that her claim under the Fourth Amendment is without merit; accordingly, the Court will grant Defendant's Motion to Dismiss with respect to this claim. Despite the Court's admonition in its order of September 19, 2003 (Doc. 24) that Plaintiff would have "one last chance" to amend her complaint, Plaintiff seeks to amend her complaint yet again to include a claim for retaliation in violation of Title VII, but does so via a single sentence buried on page fourteen of her response to Defendant's Motion to Dismiss. Absent appropriate briefing on the issue of amendment, the Court denies Plaintiff's request. Should Plaintiff desire to amend her complaint, she must move to do so in accordance with the rules of civil procedure and the local rules of this District, including Local Rule 1.10(b), so that Defendant may have the opportunity to respond to Plaintiff's points and authorities and Plaintiff may have the opportunity to reply.

3. Procedural Due Process and the Right to Be Secure

**\*7** Plaintiff's Second Amended Complaint lists deprivation of administrative process by Defendant's restroom policy among the bases for her Section 1983 claims. The Court intreprets this as claim for violation of her procedural due process rights. In order to establish such a claim, Plaintiff must allege a deprivation of a life, liberty, or property interest protected by the Constitution. *Wedges/Ledges of California, Inc., v. City of Phoenix, Arizona,* 24 F.3d 56 (9th Cir.1994). According to Defendant, Plaintiff has failed to make any such allegation. Plaintiff has neglected altogether to respond to

Defendant's arguments regarding procedural due process, leaving the Court to speculate whether her cursory allegations were intended to state a claim for deprivation of her right to continued employment, a right to use the restroom assigned to her sex, or some other undefined right. Unable to determine the nature of any alleged deprivation suffered by Plaintiff, the Court must dismiss her procedural due process claims.

Equally obtusely, Plaintiff alleges that Defendant's policy infringed on her "right to be secure in her person" by implementing a policy which subjected her to risk of bodily harm. The Court is unable to discern the constitutional basis for such a claim, nor has Plaintiff seen fit to explain the origins of such a right. To the extent that Plaintiff seeks to assert her right to be secure against unreasonable search and seizure as created by the Fourth Amendment, the Court dismisses such a claim, for Plaintiff has already conceded that any Fourth Amendment claim is misstated. To the extent that Plaintiff intends to claim the violation of another ambiguous right, it is dismissed for failure to state a claim.

### 4. Equal Protection

Plaintiff alleges that Defendant's restroom policy violated her right to equal protection of the laws guaranteed by the Fourteenth Amendment, construing Defendant's decision to require proof of biological sex only from its transsexual employees as a violation of this right. Discrimination on the basis of failure to conform with sex or gender stereotypes not only constitutes a violation of Title VII under *Price Waterhouse* and its progeny, she argues, but also rises to the level of deprivation of the equal protection of the laws. Under Plaintiff's theory, Defendant's actions in response to her perceived nonconformity with their expectations of a woman's anatomy must be taken as discriminatory acts on the basis of her sex.

Rather than directly disputing the validity of this theory, Defendant argues that Plaintiff has alleged neither that similarly situated individuals were treated differently, nor that she is a member of a protected class. Defendant maintains that absent membership in a protected class or infringement of a fundamental right, Plaintiff's claims are subject to rational basis scrutiny. Furthermore, these claims cannot survive the Motion to Dismiss, according to Defendant, as Plaintiff has not alleged facts sufficient to overcome the presumption that the government's classifications are rational.

**\*8** The Court first addresses Defendant's contention that Plaintiff fails to allege treatment different than that of similarly situated individuals. Plaintiff alleges that only individuals who do not meet Defendant's expectations of sex and gender are subjected to demands of proof of their biological sex before receiving permission to use the restrooms designated for their sex; employees who conform to Defendant's sex stereotypes are not required to submit such proof. Subject to Defendant's restroom policy and therefore similarly situated are all those individuals who use Defendant's restroom facilities; contrary to Defendant's assertion, the universe of similarly-situated individuals is not limited to transsexuals who patronize Defendant's restrooms.

Defendant also suggests that Plaintiff has not alleged membership in a protected class. Plaintiff does not suggest that her status as a transsexual places her within such a class. [11] Instead, she seeks relief from discrimination as a biological woman who does not conform with Defendant's sex stereotypes. Classifications on the basis of sex are closely scrutinized. *United States v. Virginia,* 518 U.S. 515, 531, 116 S.Ct. 2264, 2274, 135 L.Ed.2d 735 (1996). Whether discrimination on the basis of nonconformity with sex stereotypes constitutes discrimination on the basis of sex for the purposes of equal protection claims, however, is an open question. [12]

---

[11]      Previous cases have held that transsexuals are not a protected class. *See Holloway v. Arthur Andersen & Co.,* 566 F.2d 659, 663 (9th Cir.1977). However, more recent jurisprudence recognizes that science may now support a finding that transsexuality, or gender identity disorder, is an "immutable characteristic determined solely by the accident of birth," and that classifications on that basis are suspect. *Brown v. Zavaras,* 63 F.3d 967, 971 (10th Cir.1995), *quoting Frontiero*

> *v. Richardson,* 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). The Court declines to make any such finding in this case, in the absence of appropriate briefing on the issue.

[12]

> The Supreme Court has held that discrimination against those who fail to conform with sex stereotypes constitutes discrimination on the basis of sex and gender for the purposes of Title VII, *Price Waterhouse,* 490 U.S. at 251, 109 S.Ct. at 1791, but there is little indication of whether this form of discrimination also violates the equal protection clause.

For now, it will remain an open question, as this Court finds its answer unnecessary to the resolution of this motion; regardless of whether Defendant has discriminated against Plaintiff on the basis of her sex, its actions have created a classification which must be rationally related to a legitimate state interest in order to survive judicial scrutiny. *Romer v. Evans,* 517 U.S. 620, 631–32, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996); *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 446, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313 (1985). Defendant argues that its policy protects the privacy and safety interests of its restroom users. Although the Court agrees that Defendant possesses a legitimate interest in protecting the privacy and safety of its patrons, see *Norwood,* 590 F.Supp. at 1421; *Brooks,* 537 F.Supp. at 1128–32, the Court fails to see, and Defendant fails to indicate, how the implementation of that policy in a manner which singles out nonconforming individuals, including transsexuals, for a greater intrusion upon their privacy is rationally related to such an interest.

Though government action may be upheld if its connection to a legitimate interest is tenuous or the action is unwise, where "the adverse impact on the disfavored class is an apparent aim of the legislature, its impartiality would be suspect." *Romer,* 517 U.S. at 632–33, 116 S.Ct. at 1627–28, *quoting Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 181, 101 S.Ct. 453, 462, 66 L.Ed.2d 368 (Stevens, J., concurring); *see also Cleburne,* 473 U.S. at 447, 105 S.Ct. at 3258. Plaintiff has alleged that the policy was created specifically in response to complaints about transsexuals, that only she and another transsexual were required to provide proof of biological sex in order to use the women's restrooms, that she was instructed to use the men's restroom if she could not or would not provide evidence that she lacked male genitalia, and that her proffer of her state-issued identification as evidence of her biological sex was rejected. Contrary to Defendant's suggestion that the justification for the policy is "readily apparent," the only justification of which the Court can conceive is one predicated on one or more of the following baseless assumptions: 1) transsexuals pose a greater risk to minors' and others' safety than any other group; 2) a biological woman can never have lived or presented herself as a man; and 3) the presence of a biological woman with male genitalia invades the privacy and/or threatens the safety of other women. Plaintiff has stated facts which overcome the presumption of rationality applied to government classifications and her Section 1983 equal protection claim therefore survives Defendant's Motion to Dismiss. *Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th Cir.1992) (stating that a plaintiff must allege facts sufficient to overcome the presumption that the government's classifications are rational in order to survive a motion to dismiss).

### 5. First Amendment Freedom of Speech

*9 Defendant's policy, Plaintiff argues, violated her First Amendment right to freedom of speech by preventing her from using the women's restroom in response to her expression of her gender and change of gender. To state a prima facie claim against Defendant for violation of the First Amendment, Plaintiff must show: (1) that she engaged in protected speech; (2) that Defendant took adverse employment action; and 3) that her speech wholly or substantially motivated the adverse employment action. *Roe v. City of San Diego,* 356 F.3d 1108, 1112 (9th Cir.2004). Defendant disputes only the first element, contending that no protected speech is at issue, because Plaintiff's conduct relates to an entirely personal matter (gender or change of gender), and government employees are only entitled to protection of speech addressing a matter of public concern. The Court agrees that a public employee's speech must relate to a matter of public concern in order to enjoy the protections of the First Amendment in federal court, *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). [13] *Cochran v. City of Los Angeles,* 222 F.3d 1195, 1200, 1201 (9th Cir.2000).

| | |
|---|---|
| 13 | Before delving into these issues, however, the Court feels it necessary to address the threshold question of whether Plaintiff's alleged conduct qualifies as speech. Defendant does not challenge Plaintiff's classification of her conduct, which includes dressing in a typically female manner, as speech for the purposes of the First Amendment, nor does the Court place it outside the scope of First Amendment protection. At least one circuit has noted that the donning of traditionally female clothes by a male student at school constitutes protected expression of that student's female gender identity. *Zalewska v. County of Sullivan, New York,* 316 F.3d 314, 320 (2d Cir.2003) (citing with approval the case of *Doe ex rel. Doe v. Yunits,* 2000 WL 33162199 (Mass.Super.Ct. Oct. 11, 2000)). While the instant case differs to the extent that Plaintiff is a biological female wearing traditionally female clothes, her attire may be understood as an expression of her change in gender identity, as it is clearly understood as such by her employer and the restroom patrons who complained of her use of the women's restroom. |

The Court, however, does not agree with Defendant's unsupported argument that expression of gender or change of gender is an issue of purely personal concern. In this circuit and others, public concern speech includes "almost *any* matter other than speech that relates to internal power struggles within the workplace." *Tucker v. State of California Dep't of Educ.,* 97 F.3d 1204, 1210 (9th Cir.1996) (emphasis in original). When determining whether speech deals with public or personal matters, Courts look to the content, context, and form of the speech to determine its nature. *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. Plaintiff's expression of her gender, unlike employee complaints about dress codes, scheduling, or other personnel issues, has its genesis not in the minutiae of workplace life, but in her everyday existence. For the last few years, Plaintiff has "lived continuously and without interruption as a person of the female gender in all aspects of daily life." (Pl.'s Second Amended Compl. at ¶ 13.) Expression of her gender and change of gender occurs both on and off the job, is directed to the public at large as well as her co-workers, and cannot be said to be "about" her employment. Therefore, Plaintiff has alleged sufficient facts for the Court to consider her expression public concern speech, and sufficient facts to state a claim for violation of the First Amendment. Defendant's Motion to Dismiss is denied with respect to Plaintiff's freedom of speech claim under Section 1983.

IT IS ORDERED denying Defendant's Motion to Dismiss (Doc. 30) with respect to Plaintiff's Title VII claim (Count I of Pl.'s Second Amended Compl.) and Plaintiff's Title IX claim (Count III of Pl.'s Second Amended Compl.).

IT IS FURTHER ORDERED granting Defendant's Motion to Dismiss with respect to Plaintiff's ADA claim (Count II of Pl.'s Second Amended Compl.).

**\*10** IT IS FURTHER ORDERED denying Defendant's Motion to Dismiss with respect to Plaintiff's Section 1983 claims (Count IV of Pl.'s Second Amended Compl.) for violation of her right to privacy, equal protection, and freedom of speech and granting Defendant's Motion to Dismiss with respect to Plaintiff's Section 1983 claims for violation of her Fourth Amendment right to freedom from unreasonable search and seizure, deprivation of administrative process (a procedural due process claim), and violation of Plaintiff's right to be secure.

IT IS FURTHER ORDERED that Defendant file its Answer within ten (10) days of the date of this order.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 2008954