UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ASHTON WHITAKER, a minor, by his
mother and next friend,
MELISSA WHITAKER,

       Plaintiff,

Civ. Action No. 2:16-cv-00943

KENOSHA UNIFIED SCHOOL DISTRICT
NO. 1 BOARD OF EDUCATION and SUE
SAVAGLIO-JARVIS, in her official capacity as
Superintendent of the Kenosha Unified School District
No. 1,

       Defendants.

---

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

---

# INTRODUCTION

The premise of Plaintiff's case relies on the assumption that the term "sex" in Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX") does not contemplate the designation of gender on one's birth certificate. Rather, Plaintiff's view is that "sex" as used in Title IX contemplates whatever gender a person unilaterally and subjectively self-identifies. Based on this faulty premise, Plaintiff opposes the motion to dismiss the Amended Complaint.

Regardless of any conceptions in society about what defines "sex," KUSD has not violated the law by recognizing the undisputed differences between biological males and females in its application of the law as it stands today. Plaintiff may identify as a "boy," and Plaintiff's family, friends, and doctors may very well accept and embrace that belief, but this belief cannot be the basis for creating legal rights. When Title IX addresses non-discrimination on the basis of "sex" it addresses the designation of gender on one's birth certificate: it is unlawful to discriminate against women because they are women and against men because they are men.

The relief that Plaintiff seeks ignores the growing hesitation of courts across the country to recognize the claims that Plaintiff sets forth in the Amended Complaint. It also fails to acknowledge the strong indicators that the May 12, 2016, guidance letter from the U.S. Department of Education ("Dept. of Edu.") (the "Dear Colleague Letter"), which Plaintiff relies so heavily upon, will be unenforceable.[1]

---

[1] Plaintiff also relies on the recent decision in the Middle District of North Carolina, *Carcaño v. McCrory*, 1:16-cv-236 (M.D.N.C. Aug. 26, 2016) (Pltf.'s Memo. of Law in Opp. to Mot. to Dismiss, Ex. A. (Doc. 19-1)), to support the interpretation of Title IX set forth in *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 734 (4th Cir. 2016), *mandate recalled and stay issued pending cert. petition by Gloucester Cty. Sch. Bd. v. G.G. ex rel. Grimm*, 136 S. Ct. 2442 (2016). However, in reaching its conclusions, the *McCrory* court said that it was constrained to follow the holding in *G.G.* because the fate of *G.G.* is uncertain, and until it is reversed, *G.G.* remains the law in the Fourth Circuit. *Id.* at 34-36. This Court is not constrained by any circuit precedent and should strongly consider the Supreme Court's stay of the Fourth Circuit's mandate in *G.G.* and the recent decision in *Texas v. United States*, No. 7:16-CV-00054-O, 2016 WL 4426495 (N.D. Tex. Aug. 21, 2016) (Doc. 18-5). These recent developments show that the holding in *G.G.* and the Dept. of Edu.'s interpretation of Title IX are still crumbling.

In sum, Plaintiff's Amended Complaint must be dismissed because: (1) transgender status is not protected under Title IX; (2) Plaintiff has not pled facts to plausibly suggest a cause of action for sex-stereotyping under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); and (3) Plaintiff has failed to plead facts sufficient to overcome the rational basis for KUSD's policy of requiring students to use the bathroom that corresponds with their biological sex. [2]

## DISCUSSION

I. **PLAINTIFF'S TITLE IX CLAIM FAILS BECAUSE THE PROHIBITION AGAINST "SEX" DISCRIMINATION DOES NOT ENCOMPASS BEING TRANSGENDER.**

Plaintiff's Title IX claim relies entirely on a premise that transgender status is encompassed with the definition of "sex" under Title IX. Plaintiff's argument is entirely misguided. The only way to reach Plaintiff's conclusion is to judicially enlarge the statutory protections under Title IX, and yet, the Seventh Circuit has made it clear that it is not willing to enlarge the scope of statutory protections absent congressional action. The Court made this clear by refusing to enlarge Title VII to encompass sexual orientation. *See Hively v. Ivy Tech Cmty. Coll., S. Bend*, No. 15-1720, 2016 WL 4039703 (7th Cir. July 28, 2016)[3]. This is not a recent development within the Seventh Circuit. The *Hively* Court acknowledged its decision in *Ulane v. E. Airlines, Inc.*, 742 F.2d 1081 (7th Cir. 1984), *cert denied*, 471 U.S. 1017 (1985), that the Seventh Circuit refused to expand the

---

[2] Plaintiff has also filed a Motion for Preliminary Injunction requesting that the Court grant the ultimate relief sought by this lawsuit. Pltf.'s Motion for Preliminary Injunction (Doc. 10). Correspondingly, KUSD incorporates by reference its Brief in Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 17). Specifically, KUSD's opposition against Plaintiff's Success on the merits argument applies equally in support of the Motion to Dismiss. *See Wisconsin Coal. for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1044 (E.D. Wis. 2001) (stating that "the question of whether the plaintiff has demonstrated a reasonable likelihood of success on the merits of its claims is, to a large degree, bundled up with the issues raised by the defendants' motion to dismiss" and if plaintiff "fails to state a claim upon which relief can be granted, then it follows that a preliminary injunction would be inappropriate precisely because the plaintiff would not have satisfied the first of the preliminary injunction standards").
[3] A copy of *Hively v. Ivy Tech Cmty. Coll., S. Bend*, No. 15-1720, 2016 WL 4039703 (7th Cir. July 28, 2016), was submitted as Doc. 18-6.

term "sex" in Title VII to encompass gender identity, and that *Ulane* is still good law in the Seventh Circuit, having never been overturned.

Plaintiff's claim that *Hively* supports the conclusion that a transgender boy states a sex discrimination claim under Title IX for being treated differently from other "boys" is completely unsupported by the actual holding of the case. *See* Pltf.'s Memo. of Law in Opp. to Mot. to Dismiss (Doc. 19) at 18. The Seventh Circuit's conclusion in *Hively* that sexual orientation is not protected under Title VII's prohibition against "sex" discrimination foretells that being "transgender" is likewise not protected under Title IX's prohibition against "sex" discrimination.

In fact, the *Hively* court re-affirmed the long-standing holding in *Ulane* and its progeny (*Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 704 (7th Cir. 2000) and *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1085 (7th Cir. 2000)), that sexual orientation and transgender status do not enjoy Title VII protection against sex discrimination. *Hively*, 2016 WL 4039703, at *1. The Court explained:

> In *Ulane*, we came to this conclusion by considering the ordinary meaning of the word 'sex' in Title VII, as enacted by Congress, and by determining that '[t]he phrase in Title VII prohibiting discrimination based on sex, in its plain meaning, implies that it is unlawful to discriminate against women because they are women and against men because they are men.' *Id.* at 1085.

*Id.* The Court also explained that it was bound by these conclusions:

> We are presumptively bound by our own precedent in *Hamner, Spearman, Muhammad, Hamm, Schroeder,* and *Ulane.* 'Principles of stare decisis require that we give considerable weight to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling.'

*Id.* at *2 (citing *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006)).

Plaintiff states without citing any authority, that *Ulane*'s ruling was overturned by *Price Waterhouse*. *See* Pltf.'s Memo. of Law in Opp. to Mot. to Dismiss (Doc. 19) at 20. This not

3

accurate. *Ulane*'s holding that gender identity is not protected by Title VII has never been overturned by the Supreme Court or the Seventh Circuit. *See Hively*, 2016 WL 4039703, at *2. The cases cited by Plaintiff only stand for the proposition that a transgender plaintiff, like anyone else, may bring a Title VII claim for sex-stereotyping. *See e.g.*, *Glenn v. Brumby*, 663 F.3d 1312, 1318 n.5 (11th Cir. 2011) (citing *Smith v. City of Salem*, 378 F.3d 566, 573 (6th Cir. 2004); *Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000); *Rosa v. Park W. Bank & Trust Co.*, 214 F.3d 213, 215 (1st Cir. 2000)). It cannot be ignored, however, that courts have been reluctant to extend the sex-stereotyping theory to cover circumstances where the plaintiff is discriminated against because of the plaintiff's status as a transgender man or woman, without any additional evidence related to gender stereotype non-conformity. *Eure v. Sage Corp.*, 61 F. Supp. 3d 651, 661 (W.D. Tex. 2014) (citing *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir. 2007); *Schwenk*, 204 F.3d at 1201-02; *Ulane*, 742 F.2d at 1085; *Sommers v. Budget Mktg., Inc.*, 667 F.2d 748, 750 (8th Cir. 1982); *Schroer v. Billington*, 577 F. Supp. 2d 293, 304 (D.D.C. 2008).

Thus, while *Ulane* is not a complete bar to Plaintiff's claims, its holding that Title VII encompasses a narrow reading of the term sex is still good law. The Seventh Circuit's "understanding in *Ulane* that Congress intended a very narrow reading of the term 'sex' when it passed Title VII of the Civil Rights Act, so far, appears to be correct." *Hively*, 2016 WL 4039703, at *3.

The holding from *Hively* is the proverbial writing on the wall for Plaintiff's Title IX claim. Just like Title VII, Title IX prohibits discrimination based upon "sex." Sex discrimination means it is unlawful to discriminate against women because they are women and against men because they are men. It does not encompass discrimination against women because they believe they are men, no matter how strongly they hold that conviction.

4

Plaintiff is biologically a woman. Just like any other woman, Plaintiff is not permitted to use the men's restroom. Plaintiff simply cannot claim disparate treatment from "other" biological men when Plaintiff is not a biological man. As explained below, a policy requiring sex-segregated bathrooms on the recognized anatomical differences between men and women simply does not violate Title IX. *See Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 97 F. Supp. 3d 657, 679 (W.D. Pa. 2015).

## II. PLAINTIFF HAS FAILED TO ALLEGE PLAUSIBLE FACTS TO ESTABLISH A SEX-STEREOTYPING CLAIM.

Plaintiff obviously recognizes the weakness of asserting a claim under Title IX by virtue of being transgender, and this has led Plaintiff to create a fallback position. Plaintiff resorts to asserting a sex-stereotyping claim under *Price Waterhouse* despite the fact that no such claim exists.

In *Price Waterhouse*, the plaintiff was a woman who was denied partnership in an accounting firm at least in part because she was "macho," "somewhat masculine," and "overcompensated for being a woman." 490 U.S. at 235. One partner advised her she could improve her chances for partnership if she would "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* In concluding the plaintiff had met her burden of establishing that gender played a motivating part in the employment decision, a plurality of the court explained that "an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Id.* at 250. The court stated that "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group." *Id.* at 251. This has come to be known as a "sex-stereotyping" claim.

5

Plaintiff's attempt to find protection for transgender status by alleging sex-stereotyping has been attempted and rejected by multiple courts. For example, in *Etsitty*, 502 F.3d at 1222-23, the plaintiff, a biological male who identified as female, argued that even if transsexuals are not entitled to protection under Title VII, "she is nevertheless entitled to protection as a biological male who was discriminated against for failing to conform to social stereotypes about how a man should act and appear." The plaintiff argued that although courts have previously declined to extend Title VII protection to transsexuals based on the interpretation of "sex," this approach has been supplanted by the more recent rationale of *Price Waterhouse. Id.* at 1223. Plaintiff contended that after *Price Waterhouse,* an employer's discrimination against an employee based on the employee's failure to conform to stereotypical gender norms is discrimination "because of sex" and may provide a basis for an actionable Title VII claim. *Id.* The Tenth Circuit, while not deciding whether discrimination based on an employee's failure to conform to sex stereotypes always constitutes discrimination "because of sex", held that the plaintiff failed to rebut the defendant's legitimate nondiscriminatory reasons—"its decision to discharge Etsitty was based solely on her intent to use women's public restrooms while wearing a UTA uniform, despite the fact she still had male genitalia." *Id.* at 1224.

Additionally, the plaintiff in *Johnston*, 97 F. Supp. 3d at 680[4], made a similar attempt to cloak a Title IX claim in sex-stereotyping clothing, and this too was rejected. In rejecting this claim, the court noted that the plaintiff did not allege that "Defendants discriminated against him

---

[4] Plaintiff incorrectly states that *Johnston* failed to analyze the plaintiff's Title IX claim under the *Price Waterhouse* framework. *See* Pltf.'s Memo. of Law in Opp. to Mot. to Dismiss (Doc. 19) at 22. This statement ignores the specific text of the opinion in which the Court held that plaintiff simply has not alleged that Defendants discriminated against him because he did not behave, walk, talk, or dress in a manner inconsistent with any preconceived notions of gender stereotypes. *Johnston*, 97 F. Supp. 3d at 681 (citing *Price Waterhouse,* 490 U.S. at 235).

6

because of the way he looked, acted, or spoke. Instead, Plaintiff alleges only that the University refused to permit him to use the bathrooms and locker rooms consistent with his gender identity rather than his birth sex." *Id.* The court determined that plaintiff failed to state a claim under *Price Waterhouse* because the pleadings established that the University treated plaintiff in conformity with his male gender identity in all other respects besides bathroom usage and had not alleged that the defendants discriminated against him because he did not "behave, walk, talk, or dress in a manner inconsistent with any preconceived notions of gender stereotypes." *Id.* at 681.

In yet another case in which a transgender plaintiff's sex-stereotyping claim was rejected, in *Johnson v. Fresh Mark, Inc.*, 337 F. Supp. 2d 996, 999 (N.D. Ohio 2003), *aff'd,* 98 F. App'x 461 (6th Cir. 2004), the plaintiff argued that *Ulane*'s holding that Title VII did not protect plaintiff's transgender status did not apply because plaintiff was not alleging discrimination based on transsexuality *per se*; rather, she asserted that the defendant engaged in "sexual stereotyping." The District Court found that plaintiff's allegation that the defendant fired her because her appearance and behavior did not meet the company's sex stereotypes of a woman was "a disingenuous re-characterization of a transsexuality discrimination claim." *Id*. at 999. The District Court held that the defendant "did not require Plaintiff to conform her *appearance* to a particular gender stereotype, instead, the company only required Plaintiff to conform to the accepted principles established for gender-distinct public restrooms," and therefore, "insofar as Plaintiff's appearance was not challenged by her employer," the Court found that Plaintiff did not state a valid claim for sex-stereotyping as that practice has been interpreted by *Price Waterhouse* and its progeny. *Id.* at 1000.

Despite these cases, it is not impossible to find protection by alleging sex-stereotyping in the right case. Since *Price Waterhouse*, courts have relied on the sex-stereotyping doctrine in

7

finding discrimination based on sex under Title VII, but in doing so, courts have generally required evidence of gendered statements or acts that target a plaintiff's conformance with traditional conceptions of masculinity or femininity. *Eure*, 61 F. Supp. 3d at 661; *see, e.g.*, *E.E.O.C. v. Boh Bros.*, 731 F.3d 444, 454 (5th Cir. 2013) (finding that evidence that the plaintiff's coworkers taunted him with "sex-based epithets" "directed at [his] masculinity," as well as physical acts of simulated anal sex, simulated male-on-male oral sex, and genital exposure was sufficient to prevail on a gender-stereotyping theory); *Nichols v. Azteca Res. Enters., Inc.*, 256 F.3d 864, 874 (9th Cir. 2001) (finding that evidence that the male plaintiff was "attacked for walking and carrying his tray 'like a woman'—i.e., for having feminine mannerisms," that coworkers called the plaintiff names "cast in female terms," and that coworkers and supervisors referred to him as "she" and "her" was sufficient to prevail on a sex stereotyping theory). Even *Glenn v. Brumby*, 663 F.3d 1312, 1318-19 (11th Cir. 2011), cited by Plaintiff, explained that whether transgender or not, discrimination on the basis of gender stereotypes, such as wearing jewelry that was considered too effeminate, carrying a serving tray too gracefully, or taking too active a role in child-rearing, is what is meant by a sex-stereotyping claim.

It is against this legal background that Plaintiff now casts claims that KUSD engaged in sex-stereotyping. Plaintiff alleges that: KUSD had a policy of requiring students to use bathrooms and overnight accommodations consistent with their birth gender; some employees of KUSD used the name on plaintiff's birth certificate and used female pronouns to address plaintiff; KUSD initially did not let Plaintiff run for junior prom king; and an unsubstantiated future policy of requiring Plaintiff to use a green wristband. *See* Pltf.'s Amended Comp. (Doc. 12) at ¶¶ 114-116. From these few allegations Plaintiff concludes that KUSD is "treating [Plaintiff] differently from

8

other male students based on his gender identity, the fact that he is transgender, and his nonconformity to male stereotypes." *Id.*

These limited factual allegations do not formulate a cause of action for a sex-stereotyping claim. These allegations do not plausibly suggest that KUSD discriminated against Plaintiff because of the way Plaintiff dressed, spoke, or behaved, or that Plaintiff was treated adversely for not dressing, acting, or speaking like a woman. *See Johnston*, 97 F. Supp. 3d at 681. The allegations stated above, even if assumed true, only relate to Plaintiff's status as a transgender individual.

Plaintiff's allegation about an alleged policy of requiring transgender students to identify with green wristbands also fails to plausibly suggest a claim for relief. First, the allegation is so speculative that it is deficient as a matter of law. In order to survive a motion to dismiss, a plaintiff's complaint must provide "more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do. . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." *Id* at 556. This requires the Court to discard any and all legal conclusions from the pleading, and second, as to the remaining factual allegations, the court should test the sufficiency of the facts pled to determine whether they provide the necessary "factual enhancement" to push the claim across the line from a mere possibility of entitlement to relief into the territory of plausibility of entitlement to relief. *Twombly*, 550 U.S. at 556; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Stated another way, a complaint must include sufficient "factual enhancement" to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 557. A claim lacks the sufficient factual enchantment when it

9

describes "fantastic or delusional scenarios." *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Second, Plaintiff's allegation is that based on a former KUSD employee's conversation with Melissa Whitaker, Plaintiff, "upon information and belief" believed that a green wristband practice <u>may</u> be implemented in the new school year. Pltf.'s Amended Comp. (Doc. 12) at ¶¶ 80-83. Such speculation as to future conduct is insufficient to state a claim upon which relief can be granted. *See O'Brien v. Omni Pro Elecs., Inc.*, No. 96 C 50043, 1996 WL 459853, at *3 (N.D. Ill. Aug. 13, 1996)[5] (stating that plaintiff fails to state a cause of action when the allegations refer to future intent or conduct of defendant).

In sum, the Amended Complaint has not alleged any concrete, non-speculative facts that could state a plausible claim that Plaintiff was discriminated against based on the failure to conform to stereotypical conceptions of male or female gender. Plaintiff was permitted to attend school and live as a male for all extensive purposes without interference other than KUSD's bathroom policy. This policy is not-sex stereotyping and Plaintiff's Title IX claim fails.

### III. PLAINTIFF HAS FAILED TO STATE AN EQUAL PROTECTION CLAIM BECAUSE PLAINTIFF CANNOT OVERCOME THE PRESUMPTION THAT KUSD'S POLICIES ARE RATIONAL.

Plaintiff agrees that the Supreme Court and the Seventh Circuit have never recognized transgender as a suspect classification entitled to heightened scrutiny. *See* Pltf.'s Memo. of Law in Opp. to Mot. to Dismiss (Doc. 19) at 5. Therefore, the Court must resist Plaintiff's urging to follow a minority of other courts who have failed to head the Supreme Court's warning against the creation of new suspect classifications. Correspondingly, under a rational basis standard,

---

[5] A copy of *O'Brien v. Omni Pro Elecs., Inc.*, No. 96 C 50043, 1996 WL 459853, at (N.D. Ill. Aug. 13, 1996), and all other unpublished cases cited in this brief not previously submitted to the Court by the parties are attached to Defendant's Exhibit A.

10

protecting the privacy interests of all KUSD students is conceivable and plausible and Plaintiff's Amended Complaint fails to overcome this presumption of rationality.

      **A.    This Court Should Not Follow Other Circuits Who Have Defied The Supreme Court's Admonition That Courts Should Not Create New Suspect Classifications.**

The Supreme Court has admonished lower courts to not create new suspect classifications. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441, 105 S. Ct. 3249, 3255, 87 L. Ed. 2d 313 (1985). "The Supreme Court reluctantly creates new suspect classes because each new expansion involves the invalidation of virtually every classification bearing upon the newly created suspect class. *Leclerc v. Webb*, 270 F. Supp. 2d 779, 800 (E.D. La. 2003), *aff'd,* 419 F.3d 405 (5th Cir. 2005) (citing *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 318, 96 S.Ct. 2562, 2569, 49 L.Ed.2d 520 (1976) (Marshall, J., dissenting)). Heightened scrutiny on the basis of gender discrimination is inappropriate when the policy at issue applies equally to males and females. *Richenberg v. Perry*, 909 F. Supp. 1303, 1311 (D. Neb. 1995), *aff'd,* 97 F.3d 256 (8th Cir. 1996).

This Court should not follow the lead of the cases cited by Plaintiff for the proposition that transgender individuals should be subject to heightened scrutiny. The only cases cited by Plaintiff within the Seventh Circuit stand for the proposition that transgender is <u>not</u> a suspect class. *See Nabozny v. Podlesny*, 92 F.3d 446, 458 (7th Cir. 1996) ("In this case we need not consider whether homosexuals are a suspect or quasi-suspect class, which would subject the defendants' conduct to either strict or heightened scrutiny."); *Mitchell v. Price*, No. 11-CV-260-WMC, 2014 WL 6982280, at *8 (W.D. Wis. Dec. 10, 2014)[6] (stating that the issue of what scrutiny transgender prisoners should receive "has yet to be settled in this circuit").

---

[6] A copy of *Mitchell v. Price*, No. 11-CV-260-WMC, 2014 WL 6982280, at (W.D. Wis. Dec. 10, 2014), is attached to Exhibit A. *See* note 5, *supra*.

11

Rather, this Court should follow the numerous courts across the country that have considered the allegations of transgender individuals under rational basis review. *See, e.g.*, *Johnston*, 97 F. Supp. 3d at 668 (maintaining that "neither the United States Supreme Court nor the Third Circuit Court of Appeals has recognized transgender as a suspect classification under the Equal Protection Clause. Accordingly, Plaintiff's discrimination claim is reviewed under the rational basis standard"); *Etsitty*, 502 F.3d at 1227-28 (maintaining that transsexual is not a protected class under the Fourteenth Amendment); *Brown v. Zavaras*, 63 F.3d 967, 970-71 (10th Cir. 1995) (holding that transsexuals are not a protected class); *Doe v. Alexander*, 510 F. Supp. 900, 904 (D. Minn. 1981) (stating that transsexuals do not constitute a suspect class); *Braninburg v. Coalinga State Hosp.*, No. 1:08-CV-01457-MHM, 2012 WL 3911910, at *8 (E.D. Cal. Sept. 7, 2012); (stating "it is not apparent that transgender individuals constitute a 'suspect' class); *Jamison v. Davue*, No. CIV S-11-2056 WBS, 2012 WL 996383, at *3 (E.D. Cal. Mar. 23, 2012) (holding "that transgender individuals do not constitute a 'suspect' class, so allegations that defendants discriminated against him based on his transgender status are subject to a mere rational basis review"); *Kaeo-Tomaselli v. Butts*, No. CIV. 11-00670 LEK, 2013 WL 399184, at *5 (D. Haw. Jan. 31, 2013) (explaining that plaintiff's transgender status does not qualify "her as a member of a protected class. Nor has this court discovered any cases in which transgendered individuals constitute a 'suspect' class"); *Lopez v. City of New York*, No. 05 CIV. 10321(NRB), 2009 WL 229956, at *13 (S.D.N.Y. Jan. 30, 2009) (noting that "plaintiff points to no court decision that has found transgender individuals a protected class for the purposes of Fourteenth Amendment analysis, and the Court has found none"); *Starr v. Bova*, No. 1:15 CV 126, 2015 WL 4138761, at *2 (N.D. Ohio July 8, 2015) (stating that transgender status has not been identified as a suspect classification in the Sixth Circuit); *Murillo v. Parkinson*, No. CV 11-10131-JGB VBK, 2015 WL

3791450, at *12 (C.D. Cal. June 17, 2015) ("Transgender is not a protected or suspect class giving rise to equal protection."); *Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) ("To date, this court has not held that a transsexual plaintiff is a member of a protected suspect class for purposes of Equal Protection claims."); *Stevens v. Williams*, No. 05-CV-1790-ST, 2008 WL 916991, at *13 (D. Or. Mar. 27, 2008) ("Transsexuals are not a suspect class for purposes of the equal protection clause."); *Doe v. U.S. Postal Serv.*, No. CIV.A. 84-3296, 1985 WL 9446, at *4 (D.D.C. June 12, 1985) (stating that "we agree that transsexuals do not comprise a suspect class"); *Rush v. Johnson*, 565 F. Supp. 856, 868 (N.D. Ga. 1983) ("Examining the traditional indicia of suspect classification, the court finds that transsexuals are not necessarily a discrete and insular minority.").[7]

Plaintiff's Equal Protection claim—like the plaintiff in *Johnston*—relies primarily upon *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir.2011) and *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), for the premise that discrimination based on being transgender is prohibited sex discrimination under the Equal Protection Clause and is therefore subject to heightened scrutiny. 97 F. Supp. 3d at 669 n.11. Plaintiff misses the subtle distinction in these cases.

These cases address the Equal Protection claims as discrimination on the basis of gender because they raise sex-stereotyping claims under *Price Waterhouse*. They do not hold that the status of being transgendered is entitled to heightened scrutiny. As stated in *Johnston*, "[t]hese

---

[7] Copies of *Braninburg v. Coalinga State Hosp.*, No. 1:08-CV-01457-MHM, 2012 WL 3911910 (E.D. Cal. Sept. 7, 2012); *Jamison v. Davue*, No. CIV S-11-2056 WBS, 2012 WL 996383 (E.D. Cal. Mar. 23, 2012); *Kaeo-Tomaselli v. Butts*, No. CIV. 11-00670 LEK, 2013 WL 399184 (D. Haw. Jan. 31, 2013); *Lopez v. City of New York*, No. 05 CIV. 10321(NRB), 2009 WL 229956 (S.D.N.Y. Jan. 30, 2009); *Starr v. Bova*, No. 1:15 CV 126, 2015 WL 4138761 (N.D. Ohio July 8, 2015); *Murillo v. Parkinson*, No. CV 11-10131-JGB VBK, 2015 WL 3791450 (C.D. Cal. June 17, 2015); *Druley v. Patton*, 601 F. App'x 632 (10th Cir. 2015); *Stevens v. Williams*, No. 05-CV-1790-ST, 2008 WL 916991 (D. Or. Mar. 27, 2008); and *Doe v. U.S. Postal Serv.*, No. CIV.A. 84-3296, 1985 WL 9446 (D.D.C. June 12, 1985), are attached to Defendant's Exhibit A. *See* note 5, *supra*.

13

cases do not treat transgender status, in and of itself, as a suspect classification." *Id.* Rather, they stand for the proposition that, as explained in *Glenn*, "discriminating against someone on the basis of his or her non-conformity constitutes sex-based discrimination under the Equal Protection Clause." *Id.* (citing *Glenn,* 663 F.3d at 1316).

The Court should not follow the few circuits that have unilaterally created a new suspect class for transgender plaintiffs. Instead, like the numerous other courts that have applied rational basis review to claims made by transgender individuals under the Equal Protection Clause, the Court should not create a new suspect classification until the Seventh Circuit or the Supreme Court has done so.

### B.     Respecting The Privacy Rights Of All Students Is Conceivable And Plausible.

The standards for rational-basis review are familiar ones—a non-suspect classification is "accorded a strong presumption of validity" and "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Richenberg*, 909 F. Supp. at 1311 (citing *Heller v. Doe by Doe*, 509 U.S. 312, 319, 113 S. Ct. 2637, 2642, 125 L. Ed. 2d 257 (1993)).  The subject action, policy, or statute is presumed constitutional and the government has no obligation to produce evidence to sustain the rationality of the classification." *Heller*, 509 U.S. at 320.  Instead, the challenging party has the burden to "negative every conceivable basis which might support it." *Id.*  Courts are compelled to accept the policy maker's "generalizations even when there is an imperfect fit between means and ends.  A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 321 (internal citations omitted).  It is hard to imagine a more deferential standard than rational basis review. *Richenberg*, 909 F. Supp. at 1311.

Situations in which courts have found violations of constitutional rights on Equal Protection grounds involve instances of systematic discrimination by government actors on a large scale. For example, in *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), the Supreme Court struck down a provision in Colorado's constitution prohibiting regulations to protect homosexuals from discrimination. The Supreme Court, calling "unprecedented" the "disqualification of a class of persons from the right to seek specific protection from the law," deemed the provision a "status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests." *Id.* at 632-33. *Romer* did not adopt some new category of suspect classification, but instead, rested on "the case-specific nature of the discrepant treatment, the burden imposed, and the infirmities of the justifications offered." *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 682 F.3d 1, 10 (1st Cir. 2012).

The rationale behind requiring students to use facilities that correspond to their birth gender in order to provide privacy to all students has also been upheld by multiple courts. *See Johnston*, 97 F. Supp. 3d at 669-70 (citing *Etsitty*, 502 F.3d at 1224; *Causey v. Ford Motor Co.*, 516 F.2d 416 (5th Cir. 1975)). KUSD's policy treats all student equally—men and women alike cannot use a bathroom that does not correspond to his or her birth gender. Plaintiff has not pled sufficient facts to overcome this conceivable and plausible reasoning, which has been accepted by courts as a legitimate interest.

## **CONCLUSION**

For the reasons stated above, KUSD respectfully request that the Court grant its motion to dismiss for failure to state a claim upon which relief can be granted and dismiss Plaintiff's Amended Complaint with prejudice.

15

Dated this 31st day of August, 2016.

                                                MALLERY & ZIMMERMAN, S.C.
                                                Attorneys for Defendants

                                                By:     <u>s/Ronald S. Stadler</u>
                                                                 Ronald S. Stadler
                                                                 State Bar No. 1017450
                                                                 Aaron J. Graf
                                                                 State Bar No. 1068924
                                                                 Jonathan E. Sacks
                                                                 State Bar No. 1103204

731 North Jackson Street, Suite 900
Milwaukee, Wisconsin 53202-4697
telephone: 414-271-2424
facsimile: 414-271-8678
e-mail: rstadler@mzmilw.com
       agraf@mzmilw.com
       jsacks@mzmilw.com