ASHTON WHITAKER, a minor, by his
Mother and next friend, MELISSA
WHITAKER,

       Plaintiff,

Case No. 16-CV-943-PP

v.

KENOSHA UNIFIED SCHOOL DISTRICT
NO. 1 BOARD OF EDUCATION and SUE
SAVAGLIO-JARVIS, in her official capacity
As Superintendent of the Kenosha Unified
School District No. 1,

       Defendants.

**DECISION AND ORDER GRANTING IN PART MOTION
FOR PRELIMINARY INJUNCTION (DKT. NO. 10)**

## I.    INTRODUCTION

On July 19, 2016, the plaintiff, Ashton Whitaker, filed this action against the defendants, Kenosha Unified School District and Sue Savaglio-Jarvis, in her official capacity as the Superintendent of the Kenosha Unified School District. Dkt. No. 1. In his complaint (amended on August 15th), the plaintiff alleges that the treatment he received at Tremper High School after he started his female-to-male transition violated Title IX, 20 U.S.C. §1681, et seq., and the Equal Protection clause of the Fourteenth Amendment. Dkt. Nos. 1, 12. On August 15, 2016, the plaintiff also filed a motion for a preliminary injunction. Dkt. No. 10. The defendants filed a motion to dismiss the next day. Dkt. No.

1

14. Both motions were fully briefed by August 31, 2016. Dkt. Nos. 11, 15, 17, 19, 21, 22. Following oral arguments on the motions on September 6, 19 and 20, the court issued an oral ruling denying the defendants' motion to dismiss. Dkt. No. 28. See also, Dkt. No. 29 (order denying motion to dismiss). For the reasons stated at the September 20, 2016 hearing, and supplemented here, the court grants in part the plaintiff's motion for preliminary injunction. Dkt. No. 10.

**II.    BACKGROUND**

The plaintiff, Ash Whitaker, is a student at Tremper High School, a public high school in the Kenosha Unified School District (KUSD). Dkt. No. 12 at ¶6. The plaintiff's mother, Melissa Whitaker, brought this action as his next friend. Id. at ¶7. She is also a high school teacher at Tremper. Id.

The plaintiff's birth certificate identifies him as female, and he lived as a female until middle school. Id. at ¶21. Around seventh grade, in late 2013, the plaintiff asked his mother about treatment for transgender individuals. Id. at ¶¶21-23; Dkt. 10-2 at 17. He later was diagnosed by his pediatrician with Gender Dysphoria. Dkt. No. 12 at ¶¶15, 25. "Gender Dysphoria is the medical and psychiatric term for gender incongruence." Dkt. No. 10-2 at 6. Individuals with gender dysphoria suffer extreme stress when not presenting themselves and living in accordance with their gender identity. Id. Treatment for gender dysphoria consists of transitioning to living and being accepted by others as the sex corresponding to the person's gender identity. Dkt. No. 12 at ¶17. To pursue medical interventions, a person with gender dysphoria must live in

accordance with their gender identity for at least one year. Id. at ¶18. If left untreated, gender dysphoria may result in "serious and debilitating" psychological distress including anxiety, depression, and even self-harm or suicidal ideation. Dkt. No. 10-2 at 6-7; Dkt. No. 12 at ¶15. The plaintiff currently is under the care of a clinical psychologist, and began receiving testosterone treatment in July 2016. Id. at ¶25.

During the 2013-2014 school year, the plaintiff began telling close friends that he was a boy, and transitioning more publicly to live in accordance with his male identity. Id. at ¶23. At the beginning of his sophomore year (Fall 2014), the plaintiff told all of his teachers and peers about his transition, and asked that they refer to him using male pronouns and by his male name. Id. at ¶24. In the spring of 2015, the plaintiff asked to be allowed to use the boys' restrooms at school. Id. at ¶27. The school administrators denied the request, stating that the plaintiff was allowed to use only the girls' restroom or the single-user, gender-neutral restroom in the school office. Id. The plaintiff did not want to use the office restroom because it was far from his classes and only used by office staff and visitors. Id. at ¶28. Consequently, the plaintiff avoided drinking liquids, and using the bathroom at school for fear of being stigmatized as different. Id. at ¶29. During his sophomore year, the plaintiff experienced vasovagal syncope[1], stress-related migraines, depression, anxiety and suicidal thoughts. Id. at ¶31.

---

[1] "Vasovagal syncope . . . occurs when you faint because your body overreacts to certain triggers, such as the sight of blood or extreme emotional distress. It may also be called neurocardiogenic syncope."

3

Upon learning, over the summer of 2015, that the US Department of Justice had concluded that transgender students have the right to use restrooms in accordance with their gender identity, the plaintiff began using the male-designated bathrooms at school starting his junior year, September 2015. Id. at ¶35. He used the male bathroom without incident until late February 2016. Id. at ¶36-37. Despite the lack of any written policy on the issue, the school informed the plaintiff, in early March, that he could not use the boys' restroom. Id. at 38. Nevertheless, to avoid the psychological distress associated with using the girls' restroom or the single-user restroom in the office, the plaintiff continued to use the boys' restrooms when necessary. Id. at ¶42.

The plaintiff and his mother met with an assistant principal and his guidance counselor on or about March 10, 2016 to discuss the school's decision. Id. at 44. The assistant principal told him that he could use only the restrooms consistent with his gender as listed in the school's official records, and that he could only change his gender in the records only if the school received legal or medical documentation confirming his transition to male. Id. Although the plaintiff's mother argued that the plaintiff was too young for transition-related surgery, the assistant principal responded that the school needed medical documentation, but declined to indicate what type of medical documentation would be sufficient. Id. at 45. The plaintiff's pediatrician sent two letters to the school, recommending that the plaintiff be allowed access to

---

http://www.mayoclinic.org/diseases-conditions/vasovagal-syncope/home/ovc-20184773 (last visited September 21, 2016).

the boys' restroom. Id. at 46. Despite lacking a written policy on the issue, id. at ¶60, the school again denied the plaintiff's request, because he had not completed a medical transition, but failing to explain why a medical transition was necessary. Id. at 47.

The plaintiff generally tried to avoid using the restroom at school, but when necessary, he used the boys' restroom. Id. at 48. Consequently, the school directed security guards to notify administrators if they spotted students going into the "wrong" restroom. Id. at ¶56. The school re-purposed two single-user restrooms, which previously had been open to all students, as private bathrooms for the plaintiff. Id. at ¶61. The plaintiff refused to use these bathrooms, because they were far from his classes and because using them would draw questions from other students. Id. Despite several more confrontations with the school administration, id. at ¶¶49, 51, 54, the plaintiff continued to use the boys' restroom through the last day of the 2015-16 school year. Id. at ¶54.[2]

The plaintiff started his senior year of high school on September 1, 2016. As of the date of oral argument on this motion (September 20, 2016), the school still refused to allow him to use the boys' restroom, and the plaintiff

---

[2] The plaintiff alleges other instances of discrimination: that the defendants refused to allow him to room with male classmates during two summer orchestra camps, resulting in his having to room alone, id. at ¶¶33-34, 86; that the defendants directed guidance counselors to give transgender students a bright green bracelet to wear (the defendants dispute this, and as of this writing, the school has not implemented such a policy), id. at ¶¶80; and the school initially refusing to allow the plaintiff to run for prom king, id. at ¶¶71-72. For the reasons the court discussed on the record at the September 19, 2016 hearing, th decision decides only the request to enjoin the defendants from prohibiting the plaintiff from using the boys' restrooms.

5

continued to avoid the restrooms generally, using the boys' restroom when needed.

The plaintiff seeks the following relief: an order (1) enjoining the defendants from enforcing any policy that denies the plaintiff's access to the boys' restroom at school and school-sponsored events; (2) enjoining the defendants from taking any formal or informal disciplinary action against the plaintiff for using the boys' restroom; (3) enjoining the defendants from using, causing or permitting school employees to refer to the plaintiff by his female name and female pronouns; (4) enjoining the defendants from taking any other action that would reveal the plaintiff's transgender status to others at school, including the use of any visible markers or identifiers (e.g. wristbands, stickers) issued by the district personnel to the plaintiff and other transgender students. Dkt. No. 10 at 2.

As discussed in the oral arguments before the court, this decision only addresses the first two requests; the court denied the orally denied the fourth request without prejudice at the September 19, 2016 hearing, and the court defers ruling on the third request to allow counsel for the defendants to discuss with his client recent developments, such as the plaintiff's legal name change and this court's denial of the defendants' motion to dismiss.

### III. DISCUSSION

#### A. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." Turnell v. CentiMark Corp.,

6

796 F.3d 656, 661 (7th Cir. 2015) (citing Goodman v. Ill. Dep't of Fin. and Prof'l Regulation, 430 F.3d 432, 437 (7th Cir. 2005)). "[A] district court engages in a two-step analysis to decide whether such relief is warranted." Id. (citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc., 549 F.3d 1079, 1085–86 (7th Cir.2008)). The first phase requires the "party seeking a preliminary injunction [to] make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." Id. at 661-62.

If the movant satisfies the first three criteria, the court then considers "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the 'public interest')." Id. at 662. When balancing the potential harms, the court uses a 'sliding scale': "the more likely [the plaintiff] is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." Id.

### B. The Plaintiff Has Shown a Likelihood That His Claims Will Succeed on the Merits.

"The most significant difference between the preliminary injunction phase and the merits phase is that a plaintiff in the former position needs only to show 'a likelihood of success on the merits rather than actual success.'" Michigan v. U.S. Army Corps of Eng'rs, 667 F.3d 765, 782 (7th Cir. 2011)

7

(quoting Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n. 12 (1987)). In the Seventh Circuit, the court "only needs to determine that the plaintiff has some likelihood of success on the merits." Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 896 (7th Cir. 2001). As the plaintiffs argued, this is a relatively low standard.

The arguments the parties made on September 20, 2016 regarding the motion for preliminary injunction mirror the arguments they made on September 19, 2016 regarding the motion to dismiss. Essentially, the defendants argue that gender identity is not encompassed by the word "sex" in Title IX, and the plaintiff disagrees. The defendants also argue that under a rational basis standard of review, the plaintiffs cannot sustain an equal protection claim; the plaintiffs respond that they can, and further, that the court should apply a heightened scrutiny standard.

The court denied the motion to dismiss because it found that there were several avenues by which the plaintiff might obtain relief. Dkt. No. 28. The court found that, because no case defines "sex" for the purposes of Title IX, the plaintiff might succeed on his claim that that word includes transgender persons. The court found that, while the defendants raised a number of arguments in support of their claim that the word "sex" does not encompass transgender persons, much of that case law came from cases interpreting Title VII, a different statute with a different legislative history and purpose. The court also found that there was case law supporting the plaintiff's position, as

8

well as the Department of Education's "Dear Colleague" letter, which, the court found, should be accorded Auer deference.

The court also noted that the plaintiff had alleged sufficient facts to support a claim of gender stereotyping, alleging that the defendants had discriminated against him because he did not fit standard stereotypes of girls (the sex the school insists is his).

The court also found that the plaintiff had alleged sufficient facts to support his claims that the defendants had violated his equal protection rights. While the court did not, at the motion to dismiss stage, and does not now have to decide whether a rational basis or a heightened scrutiny standard of review applies to the plaintiff's equal protection claim, at this point, the defendants have articulated little in the way of a rational basis for the alleged discrimination. The defendants argue that students have a right to privacy; the court is not clear how allowing the plaintiff to use the boys' restroom violates other students' right to privacy. The defendants argue that they have a right to set school policy, as long as it does not violate the law. The court agrees, but notes that the heart of this case is the question of whether the current (unwritten) policy violates the law. The defendants argue that allowing the plaintiff to use the boys' restroom will gut the Department of Education regulation giving schools the discretion to segregate bathrooms by sex. The court noted at both the September 19 and September 20 hearings that it did not agree.

Because of the low threshold showing a plaintiff must make regarding likelihood of success on the merits, see Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir.1999), and because the plaintiff has articulated several bases upon which the court could rule in his favor, the court finds that the defendant has satisfied this element of the preliminary injunction test.

### C. The Plaintiff Has Shown that He Has No Adequate Remedy at Law.

The court observed at the September 20 hearing that neither party focused much attention, either in the moving papers or at oral argument, on the question of whether the plaintiffs had an adequate remedy at law. The plaintiffs argued that plaintiff Ash Whitaker has only one senior year. They argued that even if, at the end of this lawsuit, the plaintiffs were to prevail, no recovery could give back to Ash the loss suffered if he spent his senior year focusing on avoiding using the restroom, rather than on his studies, his extra-curricular activities and his college application process. The defendants made no argument that the plaintiffs have an adequate remedy at law. The court finds, therefore, that the plaintiffs have shown that they have no adequate remedy at law.

### D. The Plaintiff Has Shown That He Will Suffer Irreparable Injury If The Court Does Not Enjoin The School's Actions.

The parties focused most of their arguments on the element of irreparable harm. While alleged irreparable harm does not need to occur before a court may grant injunctive relief, there must be more than a mere possibility. United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed.

1303 (1953); Bath Indus., Inc. v. Blot, 427 F.2d 97, 111 (7th Cir. 1970). Put another way, the irreparable harm must be *likely* to occur if no injunction issues. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 21–23 (2008).

During the oral arguments, the plaintiff argued that the defendants' denial of access to the boys' restroom has caused and will continue to cause medical and psychological issues that his present and future health. In support of this argument, the plaintiff pointed to the declarations from Dr. Stephanie Budge and Dr. R. Nicholas Gorton, M.D., which explain gender dysphoria and discuss, both in terms specific to the plaintiff (Dr. Budge) and terms general to persons suffering from gender dysphoria (Dr. Gorton) the effects on persons with gender dysphoria of not being allowed to live in accordance with their gender identity. See Dkt. Nos. 10-2, 10-3. The defendants responded that the court should grant little weight or credibility to these affidavits, because Dr. Budge barely knew Ash Whitaker, Dr. Gorton did not know him at all, and neither affidavit quantified the harms they described.[3]

Relying primarily on the plaintiff's declaration (which the defendants did not challenge at the hearing), dkt. no. 10-1, the court has no question that the plaintiff's inability to use the boys' restroom has caused him to suffer harm. The plaintiff's declaration establishes that he has suffered emotional distress

---

[3] While "[a]ffidavits are ordinarily inadmissible at trial . . . they are fully admissible in summary proceedings, including preliminary-injunction proceedings." Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1171 (7th Cir. 1997)(citing Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995).

11

as a result of not being allowed to use the boys' restrooms. While the school allows him to use the girls' restrooms, his gender identity prevents him from doing so. He has refused to use the single-user bathrooms, due to distance from his classes and, more to the point, the embarrassment and stigma of being singled out and treated differently from all other students. Because the defendants do not allow him to use the boys' restrooms, he has begun a practice of limiting his fluid intake, in an attempt to avoid having to use the restroom during the school day. Lack of hydration, however, exacerbates his problems with migraines, fainting and dizziness. He describes sleeplessness, fear of being disciplined (and having that impact his school record ahead of his efforts to get into college), and bouts of tearfulness and panic.

The plaintiff also attested to the fact that the emotional impact of his inability to use the restrooms like everyone else, and his being pulled out of class for discipline in connection with his restroom used, impacted on his ability to fully focus on his studies. The Seventh Circuit has recognized that discrimination that impacts one's ability to focus and learn constitutes harm. See e.g., Washington v. Ind. High Sch. Athletic Ass'n, Inc., 181 F.3d 840, 853 (7th Cir. 1999).

To reiterate, the court finds that Ash has suffered harm. The defendants intimated in their arguments, however, that such harm was not irreparable, because the plaintiffs had not provided any evidence that the harm would be long-lasting, or permanent. It was in this context that the defendants challenged the professional declarations the plaintiffs had provided from

12

experts in the field of gender dysphoria and gender transition. As the court stated at the September 20, 2016 hearing, however, the plaintiffs are not required to prove that Ash will be forever irreversibly damaged in order to prove irreparable harm. The Seventh Circuit has noted that irreparable harm is harm that "would [not] be rectifiable following trial." Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc., 549 F.3d 1079, 1088 (7th Cir. 2008). It has held that irreparable harm is "harm that cannot be prevented or fully rectified by the final judgment after trial." Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386 (7th Cir. 1984).

The plaintiff's spending his last school year trying to avoid using the restroom, living in fear of being disciplined, feeling singled out and stigmatized, being subject to fainting spells or migraines, is not harm that can be rectified by a monetary judgment, or even an award of injunctive relief, after a trial that could take place months or years from now. The court finds that the plaintiffs have satisfied the irreparable harm factor.

### E. The Plaintiff's Irreparable Harm Outweighs Any Harm The Defendants Might Experience and the Effects Granting the Injunction Will Have on Nonparties.

The balancing of the harms weighs in the plaintiffs' favor. The court has found that Ash Whitaker has suffered irreparable harm, and will continue to do so if he is not allowed to use the boys' restrooms. The court must balance against that harm the possible harm to the defendants.

In their moving papers, the defendants argued that requiring them to allow Ash to use the boys' restrooms would subject them to financial burdens

13

and facility changes. They did not identify why allowing Ash to use the boys' restrooms would create a financial burden; the court cannot, on the evidence before it, see what cost would be incurred in allowing Ash to use restrooms that already exist. The defendants provided no evidence regarding any facilities that they would have to build or provide.

The defendants also argued that a requirement that they allow Ash to use the boys' restrooms would violate the privacy rights of other students. They provided no affidavits or other evidence in support of this argument. The evidence before the court indicates that Ash used the boys' restroom for some seven months without incident or notice; the defendants prohibited him from using them only after a teach observed Ash in a boys' restroom, washing his hands. This evidence contradicts the defendants' assertions that allowing Ash to use the boys' restroom would violate other students' privacy rights.

The defendants argued that granting the injunctive relief would deny them the ability to exercise their discretion to segregate bathrooms by sex, as allowed by the regulations promulgated by the Department of Education. This argument is a red herring; the issuance of the injunction will not disturb the school's ability to have boys' restrooms and girls' restrooms. It will require only that Ash, who identifies as a boy, be allowed to use the existing boys' restrooms.

The defendants argued that the injunctive relief would require the defendants, in the first month of the new school year, to scramble to figure out policies and procedures to enable it to comply with the order of relief. This

14

relief, however, does not require the defendants to create policies, or review policies. It requires only that the defendants allow Ash to use the boys' restrooms, and not to subject him to discipline for doing so.

The court finds that the balance of harms weighs in favor of the plaintiff.

### F. Issuance of the Injunction Will Not Negatively Impact the Public Interest.

Finally, the court finds that issuance of the injunction will not harm the public interest. The defendants argue that granting the injunction will force schools all over the state of Wisconsin, and perhaps farther afield, to allow students who self-identify with a gender other than the one reflected anatomically at birth to use whatever restroom they wish. The defendants accord this court's order breadth and power it does not possess. This order mandates only that the defendants allow one student—Ash Whitaker—to use the boys' restrooms for the pendency of this litigation. The Kenosha Unified School District is the only institutional defendant in this case; the court's order binds only that defendant. The defendants have provided no proof of any harm to third parties or to the public should the injunction issue.

### G. The Defendants' Request for a Bond

At the conclusion of the September 20, 2016 hearing, the defendants asked that if the court were inclined to grant injunctive relief, it require the plaintiffs to post a bond in the amount of $150,000. The defendants first cited Rule 65, and then cited the Wisconsin Supreme Court's decision in <u>Muscoda Bridge Co. v. Worden-Allen Co.</u>, 207 Wis. 22 (Wis. 1931). The defendants argued that, in the event that events revealed that this court had improvidently

15

granted the injunction, the Muscoda case provided that the court should impose a bond sufficient to reimburse the defendants' costs and attorneys' fees, and counsel estimated that those fees could reach $150,000. The plaintiffs objected to the court requiring a bond, citing the plaintiffs' limited means.

Rule 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The rule leaves to the court's discretion the question of the proper amount of such a bond, and tethers that consideration to the amount of costs and damages sustained by the wrongfully enjoined party.

Counsel for the defendants argued that under Wisconsin law, "costs and damages" includes the legal fees the defendants would incur in, presumably, seeking to overturn the injunction, and argued that those fees could amount to as much as $150,000. In support of this argument, he cited Muscoda Bridge Co. v. Worden-Allen Co., 207 Wis. 22 (Wis. 1931), which held that "[i]t is the established law of this state that damages, sustained by reason of an injunction improvidently issued, properly include attorney fees for services rendered in procuring the dissolution of the injunction, and also for services upon the reference to ascertain damages." Id. at 651. The problem with this argument is that Seventh Circuit law says otherwise.

> [T]he Seventh Circuit has determined that, for purposes of Fed. R. Civ. P. 65(c), "costs and damages" damages do not include attorneys' fees. Rather, in the absence of a statute authorizing

> such fees . . . an award of attorneys' fees is only proper where the losing party is guilty of bad faith."

Minnesota Power & Light Co. v. Hockett, 14 Fed. App'x 703, 706 (7th Cir. 2001), quoting Coyne-Delany Co. v. Capital Dev. Bd. Of State of Ill., 717 F.2d 385, 390 (7th Cir. 1983)). See also, Int'l Broth. Of Teamsters Airline Div. v. Frontier Airlines, Inc., No. 10-C-0203, 2010 WL 2679959, at *5 (E.D. Wis. July 1, 2010). When there is a "direct collision" between a federal rule and a state law, the Seventh Circuit has mandated that federal law applies. Id. at 707.

The defendants did not identify any statute authorizing an award of attorneys' fees should they succeed in overturning the injunction. Thus, in order to determine the amount of a security bond under Rule 65(c), the court must consider the costs and damages the defendants are likely to face as a result of being improvidently enjoined, but not the legal costs they might incur in seeking to overturn the injunction. It is unclear what damages or costs the defendants will incur if they are wrongfully enjoined. As discussed above, the defendants have not demonstrated that it will cost them money to allow Ash to use the boys' restrooms. Because it is within this court's discretion to determine the amount of a security bond, and because the defendants have not demonstrated that they will suffer any financial damage as a result of being required to allow Ash to use the boys' restrooms, the court will not require the plaintiffs to post security.

17

## IV. CONCLUSION

For the reasons explained above, the court **GRANTS IN PART** the plaintiff's motion for a preliminary injunction. Dkt. No. 10. The court **ORDERS** that defendants Kenosha Unified School District and Sue Savaglio-Jarvis (in her capacity as superintendent of that district) are **ENJOINED** from

(1) denying Ash Whitaker access to the boys' restrooms;

(2) enforcing any policy, written or unwritten, against the plaintiff that would prevent him from using the boys restroom during any time he is on the school premises or attending school-sponsored events;

(3) disciplining the plaintiff for using the boys restroom during any time that he is on the school premises or attending school-sponsored events; and

(4) monitoring or surveilling in any way Ash Whitaker's restroom use.

The court **DENIES** the defendants' request that the court require the plaintiffs to post a bond under Rule 65(c).

Dated in Milwaukee, Wisconsin this 22nd day of September, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge