UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ASHTON WHITAKER,<br><br>     Plaintiff,<br><br> v.<br><br>KENOSHA UNIFIED SCHOOL DISTRICT NO. 1 BOARD OF EDUCATION,<br><br>     Defendant. | Civ. Action No. 2:16-cv-00943-PP<br>Judge Pamela Pepper |

**PLAINTIFF'S REPLY TO DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**

Defendant Kenosha Unified School District ("KUSD") treated Plaintiff Ash Whitaker differently than it treated other boys because he is transgender. That much is not in dispute. What is in dispute is the validity of KUSD's principal defense: that it applied to Ash what it claims to be a longstanding (though unwritten) district-wide policy limiting all students' use of restrooms, locker rooms, and other sex-segregated facilities by reference solely to the sex marker on their birth certificates, in the interest of student privacy.

Ash did not allege a district-wide policy in his complaint; rather, he alleged that KUSD officials took a variety of discriminatory actions against him in the *absence* of any clear policy. Although KUSD's defense hinges on this supposed policy, it has not provided anything more than bald assertions that such a policy existed before KUSD began discriminating against Ash, let alone that it can satisfy the stringent requirements for justifying this sex discrimination. At issue in this motion is whether Ash is entitled to discover what evidence KUSD might rely upon to support its defenses under the heightened scrutiny the Seventh Circuit has held applies here. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017).

KUSD's response entirely misses the point in comparing this situation with cases in which a plaintiff engages in a fishing expedition to prove elements of his claim. It is KUSD, not Ash, that continually claims that it is enforcing its purported policy to address actual privacy concerns. And it was KUSD, not Ash, that affirmatively offered, in its answer, that "there are multiple transgender students who understand the policy, and to the District's knowledge, comply with same." Answer [Dkt. No. 52] ¶ 60. In its Answer, KUSD is attempting to paint Ash as an unreasonable rule-breaker, rather than the victim of intentional discrimination, by declaring that other transgender students in the district readily complied with a district-wide rule banning them from sex-segregated spaces matching their gender identities. Should KUSD employ the same tactic at trial, Ash is entitled to discover evidence that might rebut such claims.

Having made these assertions, KUSD refuses to provide *any* discovery to substantiate them. KUSD can't have it both ways, and its refusal to produce discovery supporting its defenses in the case—which are, of course, relevant to this case by any measure—violates KUSD's obligations under Rule 26, under which Plaintiff has the right to probe the veracity of KUSD's defenses in this case and not simply take KUSD's statements at face value.

In short, KUSD cannot—and has not—met its twin burdens of (1) overcoming Rule 26's presumption in favor of broad discovery, or (2) showing, with any specificity, that complying with Plaintiff's requests is unduly burdensome. *See Herx v. Diocese of Fort Wayne-S. Bend Inc.*, No. 1:12-CV-122, 2013 WL 5531376, at *2, 5 (N.D. Ind. Oct. 7, 2013); *Stimeling v. Bd. of Educ. of Peoria Pub. Schs. Dist. 150*, No. 07-CV-1330, 2010 WL 375337, at *2 (C.D. Ill. Jan. 26, 2010) ("The party opposing discovery has the burden of proving that the requested discovery should be disallowed."). Because KUSD has not satisfied its burdens, Plaintiff's motion to compel should be granted.

## I. Courts have permitted broad discovery in analogous cases.

At the discovery stage, Rule 26 demands that "relevancy will be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Herx*, 2013 WL 5531376, at *2 (citations and modifications omitted); *see also Doe v. Galster*, No. 09-C-1089, 2011 WL 2784159, at *8 (E.D. Wis. July 14, 2011). In the employment context, "if a plaintiff can establish that the employment decision was made by someone outside of her work unit, then she is entitled to broader discovery." *Woods v. Von Maur, Inc.*, No. 09 C 7800, 2010 WL 3420187, at *3 (N.D. Ill. Aug. 27, 2010). That same principle holds true in a school district where district-level administrators have oversight and decision-making power over district-wide policies and practices for students.

In analogous civil rights cases—where the question is not simply what the defendant did to the plaintiff but whether the action was taken consistent with a broader policy, involving centralized decision-makers—courts regularly find broad discovery of information to be both relevant and appropriate. Courts in this Circuit and elsewhere have granted similar motions to compel discovery where defendants sought to unduly limit the scope of discovery to a specific school, work site, or department. *See, e.g.*, *Herx*, 2013 WL 5531376, at *5-6 (permitting discovery about application of a policy to similarly-situated teachers at 41 schools over a five-and-a-half-year period); *Stimeling*, 2010 WL 375337, at *4-6 (in Title VII and Equal Protection Clause employment discrimination case, permitting district-wide discovery and discovery of complaints of race discrimination made against defendant school district over seven-year period); *Woods*, 2010 WL 3420187, at *3-4 (in employment discrimination case, compelling discovery about race discrimination complaints at plaintiff's work site and all five of defendant's stores in the same region); *Bryan v. Dean Foods Co.*, No. 01 C 50459, 2002 WL 31641628, at *3

3

(N.D. Ill. Nov. 23, 2002) (in disability discrimination case, finding plaintiff employee entitled to discovery from all of employer's facilities over which the relevant decision-maker had authority, and not just the site at which plaintiff worked); *Turner v. Shoney's, Inc.*, 195 F.R.D. 637, 639 (S.D. Ind. 1999) (overruling magistrate's decision to restrict scope of discovery to plaintiff's work site, where plaintiff's supervisor was carrying out a corporate policy, finding that "plaintiff is entitled to a fair opportunity to see just how uniform the corporate 'non-tolerance policy for sexual harassment' actually was in practice," that "[i]dentifying the relevant decision-maker in a disparate treatment case is absolutely critical," and that "[a] plaintiff is entitled to probe and test the extent to which the designated person exercised independent judgment or instead carried out the policies or prejudices of others"); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 63 (D.N.J. 1985) (in teacher's employment discrimination case, refusing to restrict discovery to plaintiff's school where challenged decision was made at district level).

*Herx*, in which a highly analogous discovery dispute was resolved in plaintiff's favor, is particularly instructive here. In that case, plaintiff was a teacher at a Catholic school who was terminated after the Diocese discovered she had become pregnant as a result of in vitro fertilization, "purportedly in violation of the 'morals clause' of her contract." *Herx*, 2013 WL 5531376, at *1. After initially seeking broader discovery, plaintiff narrowed the scope of her request to information on "all the Diocese teachers who signed a Regular Teaching Contract containing the same 'morals clause' that Herx signed." *Id.* at *2. Like KUSD, the Diocese asserted that the narrowed request was "still too expansive, arguing that only teachers at the School [at which plaintiff taught], and perhaps just those who underwent in vitro fertilization treatment, are proper comparators." *Id.* The court found that because "[t]he Diocese's decision not to renew Herx's contract was based on her supposed violation of the 'morals clause'[,] . . .

4

Herx is entitled to see how the 'morals clause' has previously been applied to the Diocese teachers." *Id.* at *3. The Court found that Diocese-wide discovery was appropriate because Diocese officials had been "consulted" about her contract nonrenewal. *Id.* Furthermore, the court found that the Diocese had failed to show why the discovery requests for information from 41 schools would be overly burdensome. *Id.* at *5.

Other cases involving defendant school districts likewise demonstrate that where a challenged decision was made at a district level, district-wide discovery is warranted. In *Stimeling*, a race discrimination case against the Peoria school district, the court rejected the district's effort to restrict discovery to the security department where plaintiff worked, finding that two district-level officials played "a significant role" in the decision to terminate plaintiff and were responsible for implementing the allegedly discriminatory policy at issue. *Stimeling*, 2010 WL 375337, at *4. The court therefore found that all discrimination complaints made against the district were relevant and should be produced. *Id.* at *5. In *Robbins*, the court held that district-wide discovery was appropriate where district-level officials were involved in the challenged tenure decision giving rise to plaintiff teacher's cliams. 105 F.R.D. at 63.

The present dispute closely parallels the one in *Herx*, and the discovery permitted in that case demonstrates how reasonable and proportionate Ash's requests are here. As in *Herx*, Plaintiff has significantly narrowed the scope of his request, now seeking information from only KUSD's eleven middle and high schools.[1] This is far fewer schools than the 41 schools at issue in *Herx*. Moreover, Plaintiff's request only covers a four-year period, representing the period in

---

[1] The middle schools are Bullen, Lance, Lincoln, Mahone, and Washington. The high schools are Bradford, Indian Trail, Tremper, Hillcrest, Lakeview Tech, and Reuther. These schools have a combined student population of 10,834 students. *See* Wis. Dep't of Pub. Instruction, Wis. Info. Sys. for Educ., 2016-2017 Enrollment Data, *available at* http://wisedash.dpi.wi.gov.

5

which he attended high school, which is shorter than the five and a half year period permitted in *Herx*. KUSD claims that Tremper administrators were enforcing a district-wide policy—with evidence already showing that high-ranking district-level officials were involved in the specific decisions about Ash's access to restrooms, including meeting with Ash and his mother to discuss his restroom use and deciding to reject his doctor's recommendation that KUSD permit him to use boys' restrooms. Thus, there is nothing unusual, let alone outlandish, about Plaintiff's requests. Indeed, KUSD has already produced limited discovery showing that KUSD officials were considering accommodations for other transgender students at both Tremper and other schools around the time that the discrimination against Ash began.[2]

Both this evidence and KUSD's own position indicate that decisions regarding transgender students were made, in significant part, by district-level officials with responsibility for all of KUSD's schools rather than exclusively at the individual school level. Accordingly, district-wide discovery is appropriate to understand the nature of KUSD's policies regarding transgender students (which, as it is unwritten, exists only insofar as it is applied to individual students); whether that policy had been developed or enforced before Ash requested to use boys' facilities or after; and what the respective roles of the relevant district-level and school-level administrators were. Information about how these same officials who dealt with Ash handled other transgender students and whether the purported policy was consistently enforced are relevant to Ash's claims and KUSD's defenses. Further discovery is both relevant and necessary to understand how these students were treated; whether they did, as KUSD asserts, "comply"

---

[2] This includes a January 2015 email from a school administrator to KUSD officials regarding accommodations for a transgender student (KUSD1344-45) (marked confidential); reports of discussion about Tremper's proposed green sticker practice with another transgender student (KUSD1261, 1268); and other documents indicating KUSD officials' consideration of various policy options for transgender students with input from district staff (KUSD1331-1447).

with the segregative policies; and whether KUSD considered or utilized other approaches to further its stated interest in student privacy that it asserts in its defense in this case.

While KUSD relies on cases in which courts limited discovery to a single work site, most of those cases are inapposite and distinguishable for one common reason: each case involved alleged discrimination at an individual site, not pursuant to any broader policy, exclusively by a decision-maker at that site. *See, e.g.*, *Vajner v. City of Lake Station, Ind.*, No. 2:09-CV-245, 2010 WL 4193030, at *3 (N.D. Ind. Oct. 18, 2010) (observing that the rationale behind limiting discovery in many cases to an employee's work unit is that only the motive of an employee's own supervisors is typically relevant, but acknowledging that where decisions were made by individuals outside of the work site, courts have permitted broader discovery). KUSD offers neither case law nor argument to support its position that a plaintiff challenging a policy that the defendant itself contends was formulated and applied at a district-wide level is not entitled to district-wide discovery regarding that policy.

## II.     KUSD has failed to meet its burden of showing that the requested district-wide discovery would impose an undue burden.

### A.     KUSD has failed to show that the requested discovery would be unduly burdensome.

In its opposition brief, KUSD does not, and cannot, dispute that whether and how it enforced its policy with respect to other transgender students is relevant to probing its privacy defense. Defs' Opp. Br. at 9. Instead, KUSD can only prevail here by meeting its second burden of showing, with specificity, that producing the requested discovery would be overly burdensome or disproportional to the needs of the case. *See Herx*, 2013 WL 5531376, at *5; *Flomo v. Bridgestone Americas Holding, Inc.*, No. 1:06-cv-00627, 2009 WL 1456736, at *2

(S.D. Ind. May 20, 2009) ("It is the Defendants' job to demonstrate the point at which the burden outweighs the benefit of discovery.")

Remarkably, KUSD's argument is an attempt to fault *Plaintiff* for failing to uncover the exact information that KUSD has consistently refused to provide during the discovery period so far. Def's Opp. Br. at 9-10. With respect to Plaintiff's request for information about differential treatment of other transgender students, KUSD asserts that, after "engaging in written discovery and having many months to take the depositions of individuals, there is no evidence or even remote indication that any such events ever occurred." This assertion ignores reality.

First of all, depositions have not begun in the case; it makes sense to resolve this dispute before engaging in resource-intensive depositions without first obtaining necessary written discovery. More importantly, Plaintiff has attempted in good faith to resolve the present dispute about the scope of discovery with KUSD for months to no avail. KUSD itself has asserted that it has applied its policies to other transgender students, and has produced limited discovery indicating that transgender students attend both Tremper and other KUSD schools—but refuses to produce any information on how it treated them. Having refused to turn over evidence regarding whether other transgender students were treated differently, KUSD's argument now is that the absence of such evidence dooms Plaintiff's current request. This self-serving argument, which flouts KUSD's obligations under Rule 26, should be given no weight.

KUSD makes no effort to show that the discovery requests would, in fact, be burdensome. Instead, it resorts to baseless statements that these requests would amount to "the classic, proverbial fishing-expedition of requiring massive, intensive discovery." Def's Opp. Br. at 10. Conclusory statements like this are wholly inadequate. *See Herx*, 2013 WL 5531376, at *5; *Flomo*, 2009 WL 1456736, at *2. Having failed to show that it has even tried to ascertain the

burdensomeness of these requests, KUSD cannot simply rely on the fact that the requested discovery from 11 schools, without anything more, is burdensome. To the contrary, the likelihood is high that only a small number of openly transgender students have attended KUSD's secondary schools since 2013, and that KUSD can take reasonable, common-sense steps to identify, gather, and produce relevant, responsive information.

> **B.     KUSD's concerns about maintaining the privacy of student records are not a reason to bar discovery of those records.**

Contrary to Defendants' suggestions, neither Wisconsin's Pupil Records law, Wis. Stat. §118.125, nor the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C § 1232g, operates as a bar to discovery here. *See Doe*, 2011 WL 2784159, at *8-11. In *Doe*, also a discrimination case, the court granted plaintiff's motion to compel production of confidential student records in the face of objections identical to those KUSD makes here, holding that Wis. Stat. §118.125 did not apply and that FERPA did not prevent the production of the requested documents. *Id.* at *8-11. It held that because the action consisted solely of federal claims, FERPA—and not Wis Stat. §118.125—should supply the rule of decision governing the production of confidential student records. *Id.* at *10 (citing *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981)). Noting that FERPA "does not provide a privilege that prevents the disclosure of student records," the *Doe* court went on to find that the plaintiff had demonstrated a need for the records. *Id.* at *9, 11. In finding need, it noted in particular that—as in this case—certain of the defendants' discovery responses "could imply that they intend to rely on those records" for their own defense while refusing to produce them. *Id.* at *10. It, therefore, compelled production, subject to an appropriate protective order. *Id.* at *11.

Courts throughout the country have similarly held that "FERPA does not create an evidentiary privilege," *Morton v. Bossier Par. Sch. Bd.*, No. CIV.A. 12-1218, 2014 WL

9

1814213, at *3 (W.D. La. May 6, 2014), and "should not serve as a cloak for alleged discriminatory practices." *Rios v. Read*, 73 F.R.D. 589, 600 (E.D.N.Y. 1977). Such courts have therefore allowed discovery of student records, even those containing personally identifiable information ("PII"), in a number of circumstances, subject to appropriate safeguards. *See e.g.*, *Morton*, 2014 WL 1814213, at *4 (W.D. La. May 6, 2014) (ordering production of student records including identifying information, with parental notice and a protective order); *Rios*, 73 F.R.D. at 602 (E.D.N.Y. 1977) (ordering production of student records with a protective order providing for confidentiality and the destruction of the data when no longer needed, despite finding that such a protective procedure was not specifically required by FERPA).

Here, Plaintiff is not requesting PII (*e.g.*, students' and parents' names, addresses, Social Security numbers). Instead, he merely seeks information about how the district has treated other transgender students, with PII redacted and names replaced with anonymized unique identifiers to clarify when different students are being referenced. Since Plaintiff's request would not entail production of PII, FERPA's parental notice requirements would not be implicated. *See e.g.*, *Williams v. Howell Cheney Tech. High Sch.*, No. 3:12 CV 43 JBA, 2012 WL 5507259, at *2-3 (D. Conn. Nov. 14, 2012) (ordering production of information identifying certain students, with prior notification to their parents, and ordering that records containing information regarding other students be produced with names redacted, without ordering any notification to those students' parents); *Doe v. N. Kentucky Univ.*, No. 2:16-CV-28, 2016 WL 6237510, at *1-2 (E.D. Ky. Oct. 24, 2016) (finding that FERPA "clearly delineates how the parties may proceed to obtain/produce student educational records without violating the Act" including by redacting records "to remove student's names and other identifying information" and that "compliance with these FERPA provisions should make sealing the student records unnecessary[.]").

10

Case 2:16-cv-00943-PP   Filed 09/15/17   Page 10 of 13   Document 79

Moreover, the parties here have already entered into a protective order, which allows either party to designate documents as either Confidential or Attorneys' Eyes Only. [Dkt. No. 58]. Accordingly, KUSD already has the ability to adequately protect all sensitive information contained in the records sought.[3] Furthermore, KUSD's argument that redacting student names and providing anonymized unique identifiers would be unduly burdensome is unavailing. *See Rios*, 73 F.R.D. at 602 (noting, in response to defendants' argument that given the large number of records it would be "onerous, burdensome and a practical impossibility to require the school district to devise some method to conceal the names of individual students by substituting numbers or some other coded identification," that FERPA does not require redaction of names, given parental notification.). Thus, KUSD has no basis for withholding student records.

**III. Defendant offers no argument why it cannot produce requested discovery on complaints made by or against adult volunteers.**

In its opposition brief, KUSD focuses solely on the requested information about students' use of sex-segregated restrooms, overnight accommodations, and other facilities. Plaintiff also seeks information on how KUSD handled complaints made by or against adult volunteers to see whether Plaintiff's complaint against Colana Hutchinson, the orchestra volunteer who maintains a public Facebook group publicly criticizing Ash and made inappropriate comments to him, was handled differently than other complaints. Specifically, evidence in the record and other discovery shows that not only did KUSD fail to relieve Ms. Hutchinson of her volunteer duties after the complaint, school actively encouraged her to report on Ash's restroom use even *after* the injunction issued in the case last fall (KUSD1498-1502). Understanding how KUSD handles

---

[3] To address Defendant's concern that Melissa Whitaker might access to the documents sought, *see* Def's Opp. Br. at 11, we note that Ms. Whitaker is not a party to this lawsuit and is not entitled to see documents designated by KUSD as confidential under the protective order.

11

complaints by or about adult volunteers is relevant to this portion of Ash's allegations. By failing to address the requests about how KUSD handles complaints against or by adult volunteers at all, KUSD has conceded that such information is discoverable; thus, Plaintiff is entitled to complete responses to Interrogatories Nos. 26 and 27 on this issue.

## CONCLUSION

For the reasons stated herein, KUSD has failed to show why the requested district-wide discovery about the treatment of other transgender students is not relevant, or that such discovery would be unduly burdensome, and Plaintiff's motion to compel discovery should be granted.

Dated: September 15, 2017

Respectfully submitted,

/s Joseph J. Wardenski
Joseph J. Wardenski
Michael Allen
Sasha Samberg-Champion
Alexa Milton
RELMAN, DANE & COLFAX, PLLC
1225 19th Street, NW, Suite 600
Washington, DC 20036
Phone: (202) 728-1888
Fax: (202) 728-0848
jwardenski@relmanlaw.com
mallen@relmanlaw.com
ssamberg-champion@relmanlaw.com
amilton@relmanlaw.com

Ilona M. Turner
Shawn Thomas Meerkamper
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: (415) 865-0176
Fax: (877) 847-1278
ilona@transgenderlawcenter.org
shawn@transgenderlawcenter.org

Robert Theine Pledl
MCNALLY PETERSON, S.C.
1233 North Mayfair Road, Suite 200
Milwaukee, WI 53226
Phone: (414) 257-3399
Fax: (414) 257-3223
rpledl@mcpetelaw.com

13